James B. STANLEY, Plaintiff-Appellant,

v.

CENTRAL INTELLIGENCE AGENCY; United States Department of Defense; U.S. Army, Defendants-Appellees.

No. 79–2571.

United States Court of Appeals, Fifth Circuit. Unit B

March 16, 1981.

Richard A. Kupfer, John F. Romano, West Palm Beach, Fla., for plaintiff-appellant.

John L. Euler, Trial Atty., Torts Branch, Civ. Div., U. S. Dept. of Justice, Washington, D. C., John J. Farley, III, Jacob V. Eskenazi, U. S. Atty., Alice Daniel, Asst. Atty. Gen., Miami, Fla., Leonard Schaitman, Atty., U. S. Dept. of Justice, Robert L. Brittigan, Major, Arnold I. Melnick, Colonel, Litigation Div., Dept. of Army, Washington, D. C., for defendants-appellees.

Before GODBOLD, Chief Judge, and TUTTLE and HILL, Circuit Judges.

TUTTLE, Circuit Judge:

Appellant James B. Stanley appeals from the district court's granting of summary judgment in favor of defendant. Appellant brought suit against the United States[1] under the Federal Torts Claims Act, 28 U.S.C. § 1346(b), § 2671 *et seq.* to recover for injuries sustained allegedly as a result of defendant's negligent administration of a chemical warfare experimentation program in which Stanley was a participant. The district court found that Stanley's injuries arose out of activity incident to military service and held, therefore, that the claim was barred by the *Feres* doctrine.

Three issues are raised on this appeal. The first is whether the district court correctly found that Stanley's claims were for injuries incurred while engaging in activity incident to service and thus within the ambit of the *Feres* doctrine. The second issue is whether Stanley alleged a cause of action based on injuries sustained subsequent to his discharge. Finally, we must decide whether the district court properly ordered the entry of summary judgment rather than dismissing the case for lack of subject matter jurisdiction. We find that the trial court correctly applied *Feres* and held the United States immune to all of Stanley's claims under the Federal Tort Claims Act, since all of his injuries arose while he was engaged in activity incident to his military service. However, we reverse the granting of summary judgment, as we find that, once having found the *Feres* doctrine applicable, the district court should have dismissed the case for lack of subject matter jurisdiction.

## I. FACTS

In February, 1958, appellant was a Master Sergeant in the United States Army, stationed with his wife and children at Fort Knox, Kentucky. Responding to a posted notice, appellant volunteered to participate in an Army program allegedly intended to aid the Army in developing and testing methods of defense against chemical warfare.[2] He was assigned to the Army base

---

1. Plaintiff's original complaint, filed May 8, 1978, named as defendants the Central Intelligence Agency, the United States Department of Defense and the U.S. Army. Subsequently, plaintiff's motion to amend the complaint to name the United States Government as a party defendant was granted.

2. The statutory basis for the program was the Organization of the Army Act of 1950 (64 Stat. 322, 5 U.S.C. § 235a) which authorized the Secretary to conduct research and development programs related to activities of the Army. On February 26, 1953, the Secretary of Defense promulgated a memorandum to the service secretaries setting forth policy concerning use of volunteers in research. On November 3, 1955,

at Edgewood Arsenal, Aberdeen, Maryland. There, during the course of clinical testing, he was given Lysergic Acid Diethylamide (commonly known as LSD) without his knowledge.

Appellant claims that the defendants were negligent in several respects in their administration of the program.[3] Primarily, appellant points to their alleged negligence in their administration of LSD to human subjects, their failure to obtain his informed consent to participate in the experiment, and their failure to debrief and monitor him after the test. Appellant claims that he suffered, as a result of this negligence, severe physical and mental injuries which caused him continual problems in the performance of his military duties and ultimately disrupted his marriage.

After completing the testing, appellant returned to his regular duties and continued his career in the Army for eleven years. He retired honorably as a Sergeant First Class in 1969. In 1975, when he received a letter from the Department of the Army, Walter Reed Medical Center, soliciting his participation in a follow-up study of volunteers who participated in the 1958 experi-

ments at Edgewood Arsenal, appellant learned for the first time that he had been given LSD during the course of the 1958 experimentation.

Appellant filed claims with the United States Army and the Central Intelligence Agency[4] which were denied.[5] Thereafter, Stanley filed this suit in the district court for the Southern District of Florida.

## II. APPLICABILITY OF FERES

In *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Supreme Court considered the claims of three servicemen for recovery under the Federal Tort Claims Act for injuries sustained while they were on active duty. The Court was persuaded to dismiss the suits by consideration of factors such as the "peculiar and special relationship of the soldier to his superior, the effect of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty." *United States v. Brown*, 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954).[6] The Court held

the Secretary of the Army issued General Order No. 64 authorizing and directing the Director of Research and Development to act for the Secretary in matters of research and development. On May 17, 1956, the Director of Research and Development approved a program for the use of volunteers in psychochemical research, including defense against the chemical warfare use of Lysergic Acid Diethylamide.

3. The complaint specifically alleged negligence in the following respects: (1) Defendants knew or should have known that LSD is a consciousness and behavior altering drug capable of producing irreparably harmful results, including death, and that the drug would affect different persons in different, unpredictable ways; (2) Defendants breached their duty to warn Plaintiff; (3) Defendants failed to take adequate precautions; (4) Defendants negligently failed to debrief Plaintiff after administering the drug to advise of the potentially hazardous physiological and psychological effects; (5) Defendants negligently failed to continue to monitor the Plaintiff following the experiment; (6) Defendants negligently failed to obtain Plaintiff's informed consent.

4. The CIA found that its records disclosed no evidence that they had participated in the experiments. The Army office of the Judge Advocate General also found nothing in their records which indicated CIA involvement.

5. On November 16, 1977, Stanley received a letter from the U.S. Army Claims Service informing him that his claims under the FTCA were not payable since "injuries to individuals incurred while on duty with the United States Army are considered to be incident to the individual's service, *Feres v. United States.*" The letter further advised him that he could file suit in the appropriate United States District Court if he was dissatisfied with the action taken on his claim.

6. Other factors considered by the Court in *Feres* include the notion that Congress could not have intended to include military personnel within the FTCA coverage, given the statutory compensation system for members of the armed service; the fact that plaintiffs could not point to any liability of a private individual analogous to that which they were asserting against the United States; and the concern that application of local tort law under the FTCA

that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159.

Although the *Feres* doctrine has been questioned at times,[7] its viability was recently reaffirmed by the Supreme Court. *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1976). Therefore, if Stanley was engaged in activities incident to his military service at the time his injuries arose, the district court was correct in holding the United States immune to Stanley's suit under the Federal Tort Claims Act.

■ Appellant argues that his participation in the chemical warfare testing program should not be considered "activity incident to service" because he was a volunteer and had been given a release from his regular duties in order to participate in the program. Additionally, appellant contends that the Government's activity here was illegal and thus should not be covered by the *Feres* doctrine.

Appellant has no sound authority for his assertion that the voluntary status of his participation in the program necessitates the conclusion that *Feres* should not control. *Feres* has been applied in cases involving a wide range of voluntary activity. *See, e. g., Charland v. United States*, 615 F.2d 508 (5th Cir. 1980) (serviceman killed while voluntarily participating in a Navy Seal Training exercise); *Uptegrove v. United States*, 600 F.2d 1248 (9th Cir. 1979) (serviceman killed while voluntarily travelling as a military space available passenger); *Mason v. United States*, 568 F.2d 1135 (5th Cir. 1978) (per curiam) (motor vehicle accident on base while serviceman tending to personal business); *Hass v. United States*, 518 F.2d 1138 (4th Cir. 1975) (serviceman injured while riding horse rented from stable owned and operated by Marine

Corps); *Chambers v. United States*, 357 F.2d 224 (8th Cir. 1966) (serviceman injured in swimming pool at an Air Force base); *Schnurman v. United States*, 490 F.Supp. 429 (E.D.Va.1980) (serviceman injured while participating voluntarily in Naval experiment designed to test the effectiveness of certain protective clothing when exposed to sulphur mustard gas); *Schmid v. Rumsfield*, 481 F.Supp. 19, 21 (N.D.Cal.1979) (serviceman assaulted as result of his voluntary activities as informant assisting in the recovery of stolen government property and prosecution of drug offenses); *Loeh v. United States*, No. 77–2065–B and 77–2023–B (S.D.Ill. April 23, 1979) (serviceman injured when administered LSD while participating voluntarily in Army drug experimentation program).

Additionally, courts have consistently applied *Feres* in suits to recover for the alleged medical malpractice of Army physicians and surgeons where the claimant's activity when injured was essentially voluntary in nature. *See, e. g., Veillette v. United States*, 615 F.2d 505 (9th Cir. 1980); *Vallance v. United States*, 574 F.2d 1282 (5th Cir.) (per curiam), *cert. denied*, 439 U.S. 965, 99 S.Ct. 453, 58 L.Ed.2d 423 (1978); *Peluso v. United States*, 474 F.2d 605 (3d Cir.) (per curiam), *cert. denied*, 414 U.S. 879, 94 S.Ct. 50, 38 L.Ed.2d 124 (1973); *Hall v. United States*, 451 F.2d 353 (1st Cir. 1971); *Howell v. United States, et al.*, 489 F.Supp. 147 (W.D.Tenn.1980). *Feres* has even been applied in cases involving elective surgery. *Harten v. Coons*, 502 F.2d 1363 (10th Cir.), *cert. denied*, 420 U.S. 963, 95 S.Ct. 1354, 43 L.Ed.2d 441 (1974); *Lowe v. United States*, 440 F.2d 452 (5th Cir.), *cert. denied*, 404 U.S. 833, 92 S.Ct. 83, 30 L.Ed.2d 64 (1971). Moreover, the servicemen in the three cases before the Supreme Court in *Feres* itself were all engaged in essentially voluntary activity at the time they were injured. Therefore, appellant's contention that the voluntary nature of his participation in the

---

would interfere with the uniform conduct of military activities by imposing standards of care that varied from state to state.

7. *See* discussion in *Parker v. United States*, 611 F.2d 1007, 1010–11 (5th Cir. 1980); Note, From Feres to Stencel: Should Military Personnel Have Access to FTCA Recovery? 77 Mich.L. Rev. 1099 (1979).

program should take him outside the bounds of *Feres* is without merit.

■ Likewise, the fact that appellant had been given a release from his regular duties does not preclude the possibility that appellant was injured while engaging in "activity incident to service." In a factual setting virtually identical to the one at hand, the Second Circuit found that the serviceman was on active duty at the time the experimentation took place despite the fact that the plaintiff was on a "Temporary Duty Assignment" when he was administered LSD. *See Lerner v. United States, et al.*, No. 76 Civ. 4349 (S.D.N.Y. Jan. 16, 1978), *aff'd mem*, 578 F.2d 1368 (2d Cir., 1978). Similarly, in *Mason v. United States, supra*, this Court was not persuaded by the argument that *Feres* should not apply when a serviceman was injured during the time in which he had been given a release from his routine duties. The court reasoned that the serviceman was still subject to all military regulations and was available for emergency service or temporary duties and held the government immune to suit. 568 F.2d at 1136. *See also Stansberry v. Middendorf*, 567 F.2d 617 (4th Cir. 1978) (per curiam); *Thomason v. Sanchez*, 398 F.Supp. 500 (D.N.J. 1975), *aff'd*, 539 F.2d 955 (3d Cir. 1976) (*Feres* applied where serviceman injured while riding motorcycle on base during "off-duty" hours); *Watkins v. United States*, 462 F.Supp. 980 (S.D. Ga. 1977) (serviceman injured on base during "off duty" hours).

Appellant relies upon several cases in which military plaintiffs were allowed to recover despite the government's argument that *Feres* should apply. Those cases, however, all involved situations which are distinguishable from the situations at hand. For example, in *United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), the Supreme Court allowed a veteran to pursue his claim under the FTCA since he had actually been discharged at the time he was injured. *See also Bankston v. United States*, 480 F.2d 495 (5th Cir. 1973). In contrast, Stanley does not claim to have been discharged at the time he participated in the experiments. Stanley also fails to allege that he was on furlough or on a pass as were the plaintiffs in *Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949) and *Knecht v. United States*, 144 F.Supp. 786 (E.D.Pa. 1956), *aff'd* 242 F.2d 929 (3d Cir. 1957). Finally, Stanley was not tending to his personal affairs as he saw fit at the time of the accident as were the plaintiffs in *Parker v. United States*, 611 F.2d 1007 (5th Cir. 1980) and *Hand v. United States*, 260 F.Supp. 38 (M.D.Ga. 1966). *See also Downes v. United States*, 249 F.Supp. 626 (E.D.N.C. 1965).[8]

■ The fact that the injury occurred on a military base is strong evidence that the plaintiff was engaged in activity incident to service at the time, although this fact alone is not dispositive. *See Hand v. United States, supra; Downes v. United States, supra*. The Court must consider the totality of the circumstances surrounding the injury and distinguish between "those cases involving activities arising from life on the military reservation and those in which the presence on the base has little to do with the soldier's military service." *Parker v. United States*, 611 F.2d 1007 (5th Cir. 1980).

In the *Parker* case, this Court held that a serviceman's claim under the Federal Tort Claims Act was not foreclosed even though the injury occurred on a military base where the function the plaintiff was performing at the time of his death was not related to his military status and did not arise from his life on the base. The court allowed Parker to maintain his suit under the Act since he was on a four day pass and merely driving through the base while tending to the purely personal business of mov-

---

8. Moreover, the fact that a serviceman was tending to personal affairs at the time of his injury has not always led a court to find the situation outside the bounds of *Feres. See, e. g., Mason v. United States*, 568 F.2d 1135 (5th Cir. 1978); *Zoula v. United States*, 217 F.2d 81 (5th Cir. 1954).

ing his family to a new home at the time the accident occurred.[9]

■ In contrast, Stanley was not on a pass and was not tending to purely personal business at the time this alleged injury arose. At the time Stanley was given LSD, he was a Master Sergeant in the Army who had volunteered to participate in an experimental program in lieu of his regular duties. The experiment was conducted on an Army base by and for the benefit of the Army. Thus, the relationship between Stanley and the allegedly negligent individuals stemmed from their official military relationship. *See Lee v. United States*, 261 F.Supp. 252, 256 (C.D.Cal. 1966), *rev'd* 400 F.2d 558 (9th Cir. 1968), *cert. denied*, 393 U.S. 1053, 89 S.Ct. 691, 21 L.Ed.2d 695 (1969). *See also, Camassar v. United States*, 400 F.Supp. 894 (D.Conn. 1978), *aff'd per curiam*, 531 F.2d 1149 (2d Cir. 1976). Stanley had been informed that he was free to leave the testing program at any time; however, this freedom appears to have been restricted to his returning to his original post at Fort Knox. He did return to his original duties there after he was released from Edgewood and remained in the service for eleven years. At least, therefore, he was subject to ultimate military control throughout the duration of his participation in the program. *See Mills v. Tucker*, 499 F.2d 866 (9th Cir. 1974) (per curiam); *cf. Hall v. United States*, 451 F.2d 353 (1st Cir. 1971) (rejecting contention that *Feres* applies only where military discipline is involved.) Stanley was receiving military pay and was promised a letter of commendation for his participation in the program. Clearly his participation in the program was activity incident to his military service despite the fact that he had been given a release from his regular duties. *See Garrett v. United States*, 625 F.2d 712 (5th Cir. 1980); *Shults v. United States*, 421 F.2d 170 (5th Cir. 1969) (per curiam).

The trial court also correctly disposed of appellant's contention that the testing program was so "patently illegal" that it could not be considered activity incident to service. The cases cited by appellant in support of this contention are inapposite as they do not involve tort claims by servicemen or address the applicability of the *Feres* doctrine. *See Birnbaum v. United States*, 436 F.Supp. 967 (E.D.N.Y. 1977); *Avery v. United States*, 434 F.Supp. 937 (D.Conn. 1977); *Cruikshank v. United States*, 431 F.Supp. 1355 (D.Hawaii 1977). Moreover, the argument that a drug testing program such as the one involved in this case should be considered outside the scope of the *Feres* doctrine since the program was not the kind of activity which might reasonably be anticipated as ancillary to military service has been rejected in two other cases involving facts virtually identical to those before this Court. *Lerner v. United States*, *supra*; *Loeh v. United States, supra*; *Nagy v. United States*, 471 F.Supp. 383 (D.D.C. 1979). *See also Southard v. United States*, 397 F.Supp. 409 (E.D.Pa. 1975) (*Feres* applied despite allegation of illegal conduct by the Army).

The *Feres* doctrine has been applied broadly over the years. Although the action before the Court in *Feres* was against the United States, the doctrine has been extended to apply to suits against individual defendants. *See, e. g., Bailey v. DeQuevedo*, 375 F.2d 72 (3d Cir. 1967); *Bailey v. Van Buskirk*, 345 F.2d 298 (9th Cir. 1965), *cert. denied*, 383 U.S. 948, 86 S.Ct. 1205, 16 L.Ed.2d 210 (1966). Likewise, although the *Feres* case involved allegations of negligence, the doctrine has been extended to hold the United States immune to suits based on intentional or reckless as well as constitutional torts. *See, e. g., Jaffe v. United States*, 468 F.Supp. 632, 635 (D.N.J. 1979), *aff'd*, 592 F.2d 712 (3d Cir. 1979), *cert. denied*, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066; *Citizen National Bank of Waukegan v. United States*, 594 F.2d 1154 (7th Cir. 1978); *Calhoun v. United States*, 475 F.Supp. 1 (S.D.Cal. 1977), *aff'd*, 604

---

**9.** The *Parker* court indicated that *Feres* might have applied had Parker been attending to personal affairs arising from life on the base, such as participating in recreational activities or shopping.

F.2d 647 (9th Cir. 1979), *cert. denied*, 444 U.S. 1077, 100 S.Ct. 1079, 62 L.Ed.2d 761 (1980); *Misko v. United States*, 453 F.Supp. 513 (D.D.C. 1978), *aff'd* 593 F.2d 1371 (D.C. Cir. 1978); *Rotko v. Abrams*, 338 F.Supp. 46 (D.Conn. 1971), *aff'd*, 455 F.2d 992 (2d Cir. 1972); *Everett v. United States*, 492 F.Supp. 318, 322 (S.D.Ohio E.D., 1980); *Schnurman v. United States, supra; Sigler v. LeVan*, 485 F.Supp. 185, 191 (D.Md. 1980); *Schmid v. Rumsfeld*, 481 F.Supp. 19, 21 (N.D.Cal. 1979); *Nagy v. United States, supra; Thornwell v. United States*, 471 F.Supp. 344, 348 (D.D.C. 1979); *Lange v. Black*, No. 78–518–E (S.D.Cal. Jan. 3, 1979). *But see Jaffee v. United States*, No. 79–1543 (3d Cir. Feb. 20, 1980) (petition for rehearing en banc granted, April 11, 1980); *James v. United States*, 358 F. Supp. 1381 (D.R.I. 1973). These extensions of the *Feres* doctrine have been premised on the notion that the same policies underlying the *Feres* doctrine are involved regardless of whether the suit is against the United States or the specific individuals responsible and whether or not the legal theory of a complaint is negligence. Despite the apparent harshness of the application of *Feres* to the facts before us, we are compelled to conclude that the trial court correctly applied *Feres* and held the United States immune to Stanley's suit under the Federal Tort Claims Act for injuries allegedly sustained due to negligence in the administration of the drug testing program at Edgewood Arsenal.

### III. SEPARATE TORT THEORY

■ As an additional point on appeal, appellant contends that even if *Feres* precludes his recovery of damages based on the original experiments, he has properly alleged a separate cause of action for damages due to the negligent failure of the Army officers involved to monitor his condition after his discharge which would not be barred by *Feres*. For this contention, he relies principally on a case involving similar facts, *Thornwell v. United States, supra,* where the court allowed recovery for damages resulting from the government's failure to provide a veteran with follow-up treatment after his discharge. 471 F.Supp. at 349–53.[10]

Appellees argue that appellant's reliance upon the *Thornwell* case constitutes a new theory which appellant should not be entitled to raise for the first time in a reply brief to this appellate court. *See Higginbotham v. Ford Motor Co.*, 540 F.2d 762 (5th Cir. 1976); *Capps v. Humble Oil and Refining Co.*, 536 F.2d 80 (5th Cir. 1976); *Stanley Educational Methods, Inc. v. Becker C.P.A. Review Course, Inc.*, 539 F.2d 393 (5th Cir. 1976). We need not decide the correctness of appellee's argument on this point because we find that, in any case, Stanley has failed to allege facts which bring his case within the separate tort theory of the *Thornwell* case.

In *Thornwell*, the district court considered claims of a serviceman who had been surreptitiously drugged with LSD and then subjected to intense interrogation after he had been imprisoned as part of an Army investigation into the theft of a large number of classified documents. During his imprisonment, Thornwell had been subjected to several different, harsh interrogation techniques; the use of LSD was part of the investigation as well as part of an Army program to test the utility of LSD as an aid to interrogation. The court applied the *Feres* doctrine and dismissed those of Thornwell's claims which were based on injuries sustained due to the administration of LSD to him while he was in the service; however, the court found that *Feres* did not preclude Thornwell from pursuing claims based on injuries due to conduct occurring after his discharge. The court concluded that *Feres* should not apply to the post-discharge claims because Thornwell had been injured by two entirely separate torts—an intentional act while he was on active duty and a subsequent negligent act which "occurred, *in its entirety*, after he attained civilian status." 471 F.Supp. at 351 (em-

---

**10.** The *Thornwell* court found that the plaintiff there could recover both for acts of negligence and violations of his Fifth Amendment rights which occurred after his discharge.

phasis in original). The court found that this result was compelled by *United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), where the Court ruled that *Feres* should not prevent a veteran from recovering for service-related injuries which were aggravated by an operation performed negligently six years after his discharge from the service. Additionally, the court found that Thornwell's situation was analogous to that of the plaintiff in *Schwartz v. United States*, 230 F.Supp. 536 (E.D.Pa. 1964). There the court allowed recovery for injuries resulting from the negligent failure of the government to provide proper follow-up care to a veteran who had been treated with a radioactive contrast dye, umbrathor, when he had experienced sinus trouble while he was an enlisted man in the Navy. *See also Hungerford v. United States*, 192 F.Supp. 581 (N.D.Cal. 1961), *rev'd on other grounds*, 307 F.2d 99 (9th Cir. 1962).

Initially, we find that Stanley has failed to allege an intentional tort committed while he was in the service. Although there is some language in the *Thornwell* case which would indicate that a negligent act will in some circumstances suffice as the original tort,[11] at least one court following *Thornwell* emphasized the fact that the plaintiff there, like the plaintiff in *Thornwell*, had undergone a wilfully inflicted tort while on active duty. *Everett v. United States, supra* at 326 n.6. *See also Schnurman v. United States, supra* at 429. Thus the clearest way to fall within the theory of *Thornwell* would be to allege an intentional or wilful tort injuring an active duty serviceman and a negligent or intentional failure to provide proper follow-up care which begins after the plaintiff's discharge from the service.

Even if Stanley's allegations of negligence suffice as the original tort, however, he has failed to allege a separate negligent act occurring "entirely after discharge." The plaintiff in *Schwartz v. United States, supra*, unlike the plaintiff here, based no claim on negligence occurring during the

time he was in the service. His sole contention was that he had been injured by a series of negligently performed medical tests during the twelve year period after his discharge, which resulted in his injuries. There was no such active negligence alleged to have occurred after Stanley's discharge. Stanley has alleged merely an act of negligence which occurred while he was on active duty, the effects of which remained uncorrected after discharge. *See Nagy, supra.*

Moreover, even if the *Thornwell* court is correct in its conclusion that a mere failure to provide information is a separate actionable tort, we are not persuaded that the negligent failure to warn in Stanley's case occurred "entirely after his discharge." Thornwell received a general discharge just four months after he was given LSD. Thus, the government's failure to monitor his condition took place entirely after his discharge. Stanley, on the other hand, remained in the service for eleven years after the administration of the drug. Even if the government was negligent in failing to monitor his condition and provide him with any treatment, this negligent failure to monitor him cannot be seen as having taken place "entirely after his discharge." Stanley has at best alleged two negligent acts, the administration of the LSD and the negligent failure to monitor his condition, both of which occurred at least in part during his time as a serviceman even if they or their effects lingered after his discharge. Allegations of such "continuing torts" do not escape the application of the *Feres* doctrine.

In the *Feres* case, one of the claimants alleged that a towel had been left in his stomach during an operation while he was in the service. The towel was discovered during an operation taking place after his discharge yet the court dismissed the complaint since the original injury had occurred while he was in the service. In several other analogous cases, the courts characterized the situations as simple acts of negligence which remained uncorrected after

11. *See* 471 F.Supp. at 352.

discharge and denied recovery despite allegations of a failure to provide follow-up care. *See Henning v. United States,* 446 F.2d 774 (3d Cir. 1971), *cert. denied,* 404 U.S. 1016, 92 S.Ct. 676, 30 L.Ed.2d 664 (1972) (failure to inform veteran of true content of X-rays which had been taken while he was on active duty); *Schnurman v. United States, supra,* (failure to provide veteran with follow-up care and supervision for injuries resulting from his exposure to mustard gas while he was a serviceman participating in an experiment to test protective clothing); *Wisniewski v. United States,* 416 F.Supp. 599 (E.D.Wis. 1976)(veteran's claim based on a failure to provide him either before or after his discharge with results of a blood test taken while he was in the service). Moreover, in the *Thornwell* case itself the court stated:

> Whatever the broader complications of [*Henning* and *Wisniewski*], it is clear at the very least that a mere act of negligence which takes place while the plaintiff is on active duty and which then remains uncorrected after discharge is not grounds for suit.

471 F.Supp. at 351. We find that Stanley likewise has failed to allege a negligent act occurring entirely after his discharge necessary to fall within the separate tort theory of *Thornwell.*

In reaching this conclusion we are persuaded by the reasoning of the court in *Schnurman v. United States, supra.* In that case a serviceman who had volunteered in 1944 to participate in an experiment designed to test the effectiveness of protective clothing against exposure to sulphur mustard gas was injured when his gas mask malfunctioned. Two years later he was discharged from the service. For thirteen years after his discharge he sought medical help for chest pains, respiratory problems and other ailments but never mentioned the possibility that those injuries were the result of mustard gas exposure. In 1976 the claimant notified a doctor that he had once been exposed to sulphur mustard gas and the doctor concluded that the plaintiff's medical problems resulted from this exposure. The plaintiff then filed suit, alleging

that he had been injured by the government's negligent failure to provide him after his discharge with follow-up examinations, treatment, supervision or to warn him of the risk of physical injury presented by his exposure to mustard gas. The court found that: "The Department of the Navy could well have been more attentive to plaintiff's immediate reactions to the mustard exposure and perhaps should have ensured that the subjects were fully informed of the true nature of the experiment once the need for secrecy had passed." 490 F.Supp. at 437. Nevertheless, the court rejected plaintiff's argument based on *Thornwell.* In so doing the court stated:

> Without commenting on the compatability of [the holdings in *United States v. Brown, Schwartz v. United States* and *Thornwell*] with the *Feres* doctrine, the Court concludes that application of this continuing or separate tort theory to plaintiff's case would be inconsistent both with the instant facts and with the language and rationale of *Feres.* Plaintiff's brain, cardiovascular, hearing, respiratory, and eyesight difficulties for which he seeks compensation were not shown to be caused in any way by the government's failure to treat plaintiff after discharge or to warn him of the true nature of the gas to which he had been exposed. There was no testimony that his injuries were in any way aggravated or multiplied by this alleged negligence on the part of the government, nor was it shown that follow-up treatment could have avoided any long-term effects of the exposure, as was the case in *United States v. Brown, supra.* Indeed, simply stated, there was no evidence to support a conclusion that there was any causal connection between the plaintiff's present condition and the government's alleged failure in regard to the issue now addressed. The *Feres* doctrine, in the Court's view, is one of broad application. Disallowing recovery for an in-service tort under *Feres,* but allowing recovery for a failure to monitor and treat injuries resulting from that same tort would leave very little of *Feres* im-

munity, especially in cases where injuries do not manifest themselves until after a serviceman's discharge. *See Broudy v. United States,* Civ. No. 79–02626LEW(GX) (C.D.Cal., Jan. 2, 1980). *Id.* Similarly, we conclude that the facts and rationale of the *Feres* doctrine demand its application in this case.

## IV. GRANTING OF SUMMARY JUDGMENT

Appellant contends that even if the trial court was correct in finding that *Feres* applied to the facts of this case, the court erred in disposing of the case by way of summary judgment rather than dismissal for lack of subject matter jurisdiction. This contention is based on the notion that if *Feres* applies, a district court lacks subject matter jurisdiction because the *Feres* doctrine is a judicially created exception to the waiver of sovereign immunity contained in the Federal Tort Claims Act and when the government has not consented to suit, the court has no subject matter jurisdiction to hear the claim. Appellant argues that once a court has determined that *Feres* applies, the court lacks subject matter jurisdiction, and, therefore, has no power to render a judgment on the merits of the case. Thus, he contends that the trial court in this case had no power to grant summary judgment, which acts as a final adjudication on the merits, but should have dismissed the case without prejudice. *See Dassinger v. South Central Bell Telephone Co.,* 505 F.2d 672 (5th Cir. 1974); *State of Oregon v. United States,* 195 F.Supp. 276 (D.Ore. 1961), *aff'd* 308 F.2d 568 (9th Cir. 1962), *cert. denied,* 372 U.S. 941, 83 S.Ct. 934, 9 L.Ed.2d 967 (1963); *People v. United States,* 307 F.2d 941 (9th Cir. 1962). *See generally,* 6 *Moore's Federal Practice,* ¶ 56.-03, ¶ 56.26.

Appellant points also to cases holding that summary judgment is an extreme remedy which is proper only if the claimant is not entitled to recovery under any circumstance. *See, e. g., Weber v. Towner County,* 565 F.2d 1001 (8th Cir. 1977); *Johnson Foils, Inc. v. Huyck Corp.,* 61 F.R.D. 405 (D.C.N.Y.1973). He contends that he has a separate theory of recovery based on the Constitution and 28 U.S.C. § 1331. *See Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[12] Appellant, therefore, asks this Court to reverse the granting of summary judgment and to remand with directions that the claim be dismissed for lack of subject matter jurisdiction and that the plaintiff be allowed to amend "to correct a defective allegation of jurisdiction," 28 U.S.C. § 1653.

"The United States, as sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1352, 63 L.Ed.2d 607 (1980), *quoting United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). *Accord, Enfinger v. Enfinger,* 452 F.Supp. 553 (M.D.Ga.1978). Where no such consent exists, a district court has no jurisdiction to entertain a suit against the United States. *Mitchell, supra,* 445 U.S. at 538, 100 S.Ct. 1352. *United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); *United States v. Shaw,* 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940); *Sprouse v. Federal Prison Industries, Inc.,* 480 F.2d 1, 3 (5th Cir. 1973).

The Federal Tort Claims Act is a waiver of the federal government's immunity for the torts of its employees under

---

12. At the time plaintiff filed his complaint in this case, the Fifth Circuit took a restrictive approach to causes of action under *Bivens. See Davis v. Passman,* 571 F.2d 793 (5th Cir. 1978) (en banc); *Seibert v. Baptist,* 594 F.2d 423 (5th Cir. 1979). However, subsequent to the trial court's granting of summary judgment in this case, the Fifth Circuit's decision in *Davis* was reversed by the Supreme Court. *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). This Court has applied *Davis* retroactively, *Seibert v. Baptist,* 599 F.2d 743 (5th Cir. 1979).

certain circumstances. The Act provides that the United States shall be liable for "injury or . . . death caused by the negligent or wrongful act or omission of any employer of the Government . . . under circumstances where the United States, if a private person, would be liable to the claimant. . . ." 28 U.S.C. § 1346(b). This waiver has been construed broadly. *See United States v. Yellow Cab Co.,* 340 U.S. 543, 71 S.Ct. 63, 95 L.Ed. 595 (1951). However, this consent to suit is not without exceptions. The Act itself excludes certain types of government action from judicial review. 28 U.S.C. § 2680. More importantly, in *Feres v. United States,* the Supreme Court held that the Act did not waive immunity for claims brought by servicemen for injuries sustained while on active duty. *Dalehite v. United States,* 346 U.S. 15, 31, n.25, 73 S.Ct. 956, 965, 97 L.Ed. 1427 n.25 (1953). Courts have uniformly held that where conduct complained of falls within one of the statutory exceptions to the FTCA, the district court is without jurisdiction of the subject matter thereof. *See, e. g., First National Bank v. United States,* 552 F.2d 370, 374 (10th Cir. 1977), *cert. denied,* 434 U.S. 835, 98 S.Ct. 122, 54 L.Ed.2d 96 (1977); *Smith v. United States,* 546 F.2d 872, 876 (10th Cir. 1976); *Gibson v. United States,* 457 F.2d 1391, 1392 n.1 (3d Cir. 1972); *Konecny v. United States,* 388 F.2d 59 (8th Cir. 1967); *Sanchez Tapia v. United States,* 338 F.2d 416 (2d Cir. 1964); *Summers v. United States,* 480 F.Supp. 347, 349 (D.Md.1979). We conclude that when a case under the Tort Claims Act falls within the bounds of *Feres,* a judicially created exception to the Act, the Court likewise has no jurisdiction to hear the case.

A federal district court is under a mandatory duty to dismiss a suit over which it has no jurisdiction. *Marshall v. Gibson's Products, Inc. of Plano,* 584 F.2d 668, 671–72 (5th Cir. 1978); *Rodriquez v. Ritchey,* 556 F.2d 1185, 1192 n.30 (5th Cir. 1977) (en banc); *Scott v. Abilene Independent School District,* 438 F.Supp. 594, 598 (N.D.Ga.1977). When a court must dismiss a case for lack of jurisdiction, the court should not adjudicate the merits of the claim. *Durham v.* *Mason and Dixon Lines, Inc.,* 404 F.2d 864 (6th Cir. 1968); *Guthrie v. Dow Chemical Co.,* 445 F.Supp. 311, 315 (S.D.Tex.1978). Since the granting of summary judgment is a disposition on the merits of the case, a motion for summary judgment is not the appropriate procedure for raising the defense of lack of subject matter jurisdiction. *Studio Electrical Technicians, Local 728 v. International Photographers of the Motion Picture Industries, Local 659,* 598 F.2d 551, 552, n.2 (9th Cir. 1979); *O'Donnell v. Wien Air Alaska, Inc.,* 551 F.2d 1141, 1144–45 n.3 & 4 (9th Cir. 1977); *Solomon v. Solomon,* 516 F.2d 1018 (3d Cir. 1975); *Kowalezwk v. Walsh,* 482 F.Supp. 959, 962 (D.Mass.1979); *Titsch Printing, Inc. v. Hastings,* 456 F.Supp. 445 (D.Colo.1978); *Parker Drilling Company v. Metlakatla Indian Community,* 451 F.Supp. 1127, 1130 n.1 (D.Alaska 1978). *See also, Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 512 (5th Cir. 1980). *See generally,* 10 *Wright & Miller, Federal Practice and Procedure,* § 2713, p. 402 *et seq.* Therefore, since a defense based on the *Feres* doctrine is premised on the notion that there is no jurisdiction to hear the claim as the United States has not waived sovereign immunity for that kind of suit, such defenses should be raised by a motion to dismiss for lack of subject matter jurisdiction rather than by a motion for summary judgment. *See Donham v. United States,* 395 F.Supp. 52, 53 (E.D.Mo.E.D. 1975), *aff'd,* 536 F.2d 765 (8th Cir. 1976), *aff'd sub nom., Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1976); 6 *Moore's Federal Practice,* ¶ 56.17[65] at 56–1091, ¶ 56.26[1] at 1513–14. *See also, Mitchell v. Riddell,* 402 F.2d 842 (9th Cir. 1968), *cert. denied,* 394 U.S. 456, 89 S.Ct. 1223, 22 L.Ed.2d 415 (1969); *Jorrie v. Imperial Investment Company,* 355 F.Supp. 1088 (W.D. Tex.1973). Accordingly, we conclude that the court below erred in granting summary judgment in favor of the United States and should have dismissed the case for lack of subject matter jurisdiction.

The government's arguments to the contrary are not persuasive. Appellees cor-

rectly state the rule [13] that a district court must treat a 12(b)(6) motion for failure to state a claim as a motion for summary judgment where the trial court considers matters outside the pleadings. *See United Independent School District v. City of Laredo,* 634 F.2d 1353 (5th Cir. 1980) (Unpublished); *Save Our Cemeteries, Inc. v. Archdiocese of New Orleans, Inc.,* 568 F.2d 1074, 1077 (5th Cir.), *cert. denied,* 439 U.S. 836, 99 S.Ct. 120, 58 L.Ed.2d 133 (1978). However, a 12(b)(1) motion for lack of jurisdiction over the subject matter is not so converted. *Mortensen v. First Federal Savings and Loan Association,* 549 F.2d 884, 891 (3d Cir. 1977); *Rosemound Sand and Gravel Company v. Lambert Sand and Gravel Company,* 469 F.2d 416, 417 (5th Cir. 1972); *Riley v. Titus,* 190 F.2d 653, 655 n.1 (D.C. Cir. 1951); *Air Line Pilots Association v. Northwest Airlines, Inc.,* 444 F.Supp. 1138, 1142 (D.D. C.1978). *See also, Land v. Dollar,* 330 U.S. 731, 735 n.4, 67 S.Ct. 1009, 1010, 91 L.Ed. 1209 (1947). A dismissal for failure to state a claim is a disposition on the merits. *Kuhn v. National Association of Letter Carriers, Branch 5,* 570 F.2d 757, 760 n.5 (8th Cir. 1978). Since appellant's allegations should not have survived the 12(b)(1) jurisdictional attack based on *Feres,* the court had no jurisdiction to dispose of the case on the merits by reaching the 12(b)(6) motion of dismissal for failure to state a claim. *See Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 513 (5th Cir. 1980). Therefore, the fact that the trial court in this case considered matters outside the pleadings fails to render his action in treating the *Feres* issue on a motion for summary judgment proper. *See O'Donnell v. Wien Air Alaska, Inc., supra.*

The government also relies on several cases where the court affirmed the granting of summary judgment since subject matter jurisdiction was found lacking. *See,* e. g., *Sherwood Medical Industries v. Deknotel,* 512 F.2d 724 (8th Cir. 1975); *McDaniel v. Travelers Insurance Co.,* 494 F.2d 1189 (5th Cir. 1974) (per curiam). These cases, however, are not binding authority for the government's assertion that we should affirm the granting of summary judgment in this case. In the *Sherwood* case, the Eighth Circuit affirmed the granting of summary judgment because the court found there was no "actual controversy" as is required for a suit under the Declaratory Judgment Act. Summary judgment there was appropriate as the Declaratory Judgment Act does not of itself create jurisdiction so the court must have had another basis of jurisdiction in order to have reached the question of whether relief was available under the Declaratory Judgment Act. *Jones v. Alexander,* 609 F.2d 778, 781 (5th Cir. 1980); *Wells v. United States,* 280 F.2d 275 (9th Cir. 1970). The *McDaniel* case was a suit brought within the admiralty jurisdiction of this Court. There, we affirmed per curiam the granting of summary judgment because the plaintiff had failed in his attempt to allege that a maritime contract existed or that defendants had breached it. The question of whether the trial court should have dismissed the case for lack of jurisdiction rather than granting summary judgment was not raised.

There are cases where courts have disposed of the *Feres* issue by way of summary judgment. *See,* e. g., *Mason v. United States,* 568 F.2d 1135 (5th Cir. 1978) (per curiam); *Avila v. United States,* No. EP–80–LA–22 (W.D.Tex., July 24, 1980); *Butterline v. United States,* No. 77–3034 (E.D.Pa. January 8, 1980). However, we have found no case which addresses the precise issue before this Court, or provides any reasoned explanation for why summary judgment can be an appropriate disposition

---

**13.** Federal Rule Civil Procedure 12(b) provides in pertinent part:

　　If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

of a case in which *Feres* applies.[14] There are numerous cases where the courts have granted motions to dismiss based on the *Feres* doctrine. *See, e. g., Charland v. United States, supra; Daly v. United States,* No. 76–2381–A (N.D.Mass.1980); *Sigler v. LeVan,* 485 F.Supp. 187 (D.Md.1980). *Lerner, supra; Nagy, supra; Thornwell, supra.* Moreover, in *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), the Supreme Court found that the district court had properly dismissed the plaintiff's FTCA claims for lack of subject matter jurisdiction because *Feres* applied.

■ The Supreme Court appears to consider the *Feres* doctrine to be an exception to the waiver of sovereign immunity contained in the FTCA. *See, id,* at 674, 97 S.Ct. at 2079 (Marshall, J., dissenting); *Dalehite v. United States, supra,* 396 U.S. at 31 n.25, 73 S.Ct. at 965 n.25. We conclude, therefore, that the only correct disposition of a case based on *Feres* is dismissal for lack of subject matter jurisdiction since the United States has not consented to the kinds of suits in which *Feres* applies.[15]

Finally, appellees argue that it would be improper for this court to remand this case with leave to amend since any amendment would be futile. *See Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). They contend that *Feres* would bar even a constitutional claim which might be raised by appellants in this case. While we do not express any opinion on the merits of appellant's possible amended claims, we find that Stanley has at least a colorable constitutional claim based on *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 69 (1971). *See Jaffee v. United States,* No. 79–1543 (February 20, 1980) (petition for rehearing en banc granted, April 11, 1980); *James v. United States,* 358 F.Supp. 1381 (D.R.I.1973).

■ A court must dismiss a case over which it has no jurisdiction whenever the fatal defect appears. *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.,* 549 F.2d 368, 391 (5th Cir. 1977); *Marshall v. Gibson's Products, Inc. of Plano,* 584 F.2d 668, 671–72 (5th Cir. 1978).[16] Leave to amend defective allegations of subject matter jurisdiction should be freely given. *Eklund v. Mora,* 410 F.2d 731 (5th Cir. 1969). *See* Fed.R.Civ.P. 15(a).

While we approve the determination of the trial court that the plaintiff could not prevail on his complaint, we reverse the order granting summary judgment and remand for the consideration of the trial

---

**14.** So far as appears, the parties in none of the cases cited by defendants raised this issue. Certainly, it was not reached in either of the per curiam opinions by this Court cited by defendant. *See Mason v. United States, supra; McDaniel v. Travelers Insurance Co., supra.*

**15.** Possibly the confusion over this issue has been caused by language in *Feres.* There the court stated:

Looking to the detail of the Act, it is true that it provides broadly, that the District Court, "shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages...." This confers jurisdiction to render judgment upon all such claims. But it does not say that all claims must be allowed. Jurisdiction is necessary to deny a claim on its merits as a matter of law as much as to adjudge that liability exists. We interpret this language to mean all it says, but no more. Jurisdiction of the defendant now exists where the defendant was immune from suit before; it remains for courts, in exercise of their jurisdiction, to

determine whether any claim is recognizable in law.

340 F.2d 141. The Supreme Court then dismissed the cases for failure to state a claim. However, subsequent cases have shown that the Supreme Court appears to consider the *Feres* doctrine as an exception to the FTCA's limited waiver of immunity. Perhaps the difficulty stems from the fact that before the Supreme Court handed down its decision in *Feres,* no exception to the Tort Claims Act for activities incident to service existed, and the court correctly had jurisdiction under the Act in the *Feres* case itself to decide the cases before them on a motion to dismiss for failure to state a claim. We do not find that this language in *Feres* requires us to affirm the granting of summary judgment in this case.

**16.** *See also* Federal Rule Civil Procedure 12(h)(3) which provides: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

court of any amendment which the appellant may offer, seeking to cure the jurisdictional defect.

VACATED and REMANDED.