**Ruth Miller PITTS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 87–74–2–MAC (WDO).**

United States District Court, M.D. Georgia, Macon Division.

June 19, 1987.

Melvyn Williams, Macon, Ga., for plaintiff.

Frank L. Butler, III, Macon, Ga., for defendant.

### ORDER

OWENS, Chief Judge.

Plaintiff has brought action against the United States pursuant to the Federal Torts Claims Act (FTCA), 28 U.S.C.A. § 1346(b) (West 1976). Plaintiff alleges that damages resulted from negligence on the part of the United States Army in connection with the medical treatment her

brother, Earnest T. Miller, received while on active duty from 1943 to 1945. The government filed a motion to dismiss on various grounds, and a Rule 11 motion for sanctions. The court converted this motion into one for summary judgment and invited the parties to supplement the record. The following is the court's findings of fact and conclusions of law.

### Findings of Undisputed Fact

1. Ruth Miller Pitts, plaintiff and representative of the estates of George Mack, Freddie Miller, and Earnest Miller, is the mother of George Mack and the sister of Freddie Miller and Earnest Miller, all deceased. (Plaintiff's Complaint, p. 1).

2. Earnest Miller was inducted into the United States Army on February 9, 1943, and was discharged on July 17, 1945. While serving in the United States Army, Earnest Miller was treated repeatedly for neurosyphilis. The Army's medical authorities were aware of the degeneration which had occurred in the mental health of Earnest due to this illness prior to his discharge. (Plaintiff's Complaint, p. 1).

3. The day after his discharge from the United States Army, Earnest Miller arrived at his family's farm in Jones County, Georgia on July 18, 1945. Immediately upon his arrival, Earnest seized his two month old nephew, George Mack, and threw him down a well. Earnest also seized his twelve and one-half month old brother and threw him down the same well. Both infants drowned. (Plaintiff's Complaint, ¶ 3, 4, 10, 15).

4. At no time prior to this did the United States Army or others notify Earnest Miller's family about his illness and release from the military. (Plaintiff's Complaint, ¶ 12).

5. Earnest was thereafter declared insane and placed in Central State Hospital in Milledgeville, Georgia. He remained in this hospital until his death on September 19, 1959. (Plaintiff's Reply Brief, p. 4; Plaintiff's Exhibit 3).

6. Mrs. Magnolia Miller, Earnest's mother, sought to have her son transferred to a VA hospital. In response to her request the VA sent a social worker to visit Mrs. Miller in April of 1947. The social worker also visited Earnest Miller's guardian, J. Harris Morton, in Gray, Georgia during the same month. In her report to the VA regional office in Atlanta, Georgia dated April 29, 1947, the social worker reported as follows concerning the visit with Mr. Morton:

> Mr. J. Harris Morton, guardian, was interviewed at Gray. He explained in detail his plan to handle Mrs. Miller's suit against the U.S. Government. The nature of this suit is based *on the discharge of her son from the U.S. Army while he was psychotic*. As he returned home immediately after discharge and drowned his mother's young child and his sister's infant in a deep well, Mr. Morton stated that it is the responsibility of the Government to *reimburse the mother for loss of the children and for mental anguishy [sic] caused thereby*. He also indicated that the suit would be brought for a large sum, and that it would probably be settled out of court. He planned to employ Attorney Elijah W. Maynard of Macon for joint counsel in the case. Mr. Morton commented that Mrs. Miller is "worrisome and contentious," but he believes that she is right in contending that she should be paid for the loss of her children.

(Plaintiff's Exhibit 15, ¶ 4) (emphasis added).

7. In September of 1948, Mrs. Miller sought disability benefits from the Veterans Administration on behalf of Earnest Miller. The Administration denied this request on October 8, 1948. The written denial stated in part as follows:

> M. Disability is the result of veteran's own willful misconduct.
> DEMENTIA PRAECOX DUE TO SYPHILIS OF THE C.N.S.

In her appeal of this decision, Magnolia Miller asserted the following as her grounds:

> It is contended that the *rating of October 8, 1948 was in error* in disallowing the veteran's claim for dementia praecox.

There is inclosed for the consideration of the board a statement by Dr. R.W. Bradford of the Milledgeville State Hospital. It is requested that this case be given reconsideration under the provisions of Public Law No. 439 as it is felt that the veteran's psychotic condition is not due to misconduct. The attention of the board is invited to the fact that the veteran was inducted on February 16, 1943 with Kahn tests negative. It is felt, therefore, that the disability was incurred in service inasmuch as more than two years elapsed before the veteran was admitted to the hospital.

(Defendant's Exhibits D, E, F and H) (emphasis added).

8. The above appeal was denied. Mrs. Miller then appealed the decision to the VA Board of Veterans Appeals. On March 17, 1949, the Board affirmed the denial of benefits. (Plaintiff's Exhibit 17). In a letter to Mrs. Miller dated April 19, 1949, the Board explained its decision as follows:

Dear Mrs. Miller:

This has reference to the case of the above named veteran which was presented to the Board of Veterans Appeals to determine entitlement to service connection for a neuropsychiatric condition. Your interests have been represented by the State Department of Veterans Service, Georgia.

The Board has carefully considered the evidence of record with particular attention being given to the report of examination by Harold C. Atkinson, M.D.

The evidence establishes that the veteran's neuropsychiatric disability is due to a *specific infection* as *verified by laboratory and other findings during his period of military service.* It is clearly and unmistakably established from information recorded for clinical purposes, and other evidence, that the initial infection existed prior to entering service. The manifestations during service were characteristic of the natural progress of the disease and do not constitute aggravation of the preexisting condition. The Board, therefore, finds that the veteran's neuropsychiatric condition existed prior

to service and was not increased or aggravated by service. The benefits sought in your appeal are denied.

(Plaintiff's Exhibit 16) (emphasis added).

9. At some time after the above events, Magnolia Miller died. The plaintiff, Ruth Miller Pitts, brought an administrative claim against the United States Army on June 11, 1986, based on the military's failure to treat Earnest Miller's illness and the failure to notify his family about Earnest's mental condition. The plaintiff brought this claim on behalf of herself, Earnest Miller, Freddie Miller, and George Mack. The United States Army denied this claim on September 25, 1986. (Plaintiff's Complaint, ¶ 4 and 5; Plaintiff's Exhibit 11).

10. Plaintiff later filed a suit in this court on March 24, 1987, almost forty-two years after the discharge of Earnest Miller and the deaths of George Mack and Freddie Miller. (Plaintiff's Complaint).

## Conclusions of Law

### I. Claims on behalf of Earnest Miller

The government's first argument is that the doctrine enunciated by the United States Supreme Court in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) bars any claim on behalf of Earnest Miller. In *Feres*, the Court fashioned the rule "that the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146, 71 S.Ct. at 159.

As stated in plaintiff's complaint and restated in her reply brief, the specific allegations of negligence by the United States Army in relation to Earnest Miller are:

1. The United States Army released Earnest Miller from its custody and control without providing transportation for him to his home;

2. The United States Army failed to send Earnest to a civilian or veteran's hospital for further treatment as would be required by the seriousness of his illness; and

3. The United States Army failed to warn Earnest Miller of the potential impact that his illness would have on him. The plaintiff asserts that these alleged negligent acts constitute post-service torts that are outside the rule of *Feres*.

This contention, as an exception to *Feres*, has recently been addressed by the Eleventh Circuit in *Cole v. United States*, 755 F.2d 873 (11th Cir.1985). In *Cole*, plaintiff's decedent, Robert Cole, was assigned to a submarine which had been used as a test vessel during the Bikini Atoll atomic bomb tests. Later, on November 15, 1981, he was diagnosed as having cancer and subsequently died on May 18, 1982. His family then sued the United States under the FTCA.

The plaintiffs' original complaint alleged that the government knew or should have known of the danger from exposure to radiation, but failed to warn Cole during his lifetime. The plaintiffs filed two motions to amend their complaint after the government moved to dismiss pursuant to *Feres*. One of the proposed amendments alleged that the government failed to apprise Cole about the danger of exposure to radiation *after* he was discharged, even though *at that time* the government's knowledge of the harmful effects of exposure had expanded to the point where there arose a new duty to warn of the danger. Relying on *Feres*, the district court granted the government's motion and denied plaintiffs' motion to amend on the grounds that the new allegation would also be barred by *Feres*. *Id.* at 875.

The Eleventh Circuit affirmed the trial court's dismissal of the original complaint pursuant to the authority of *Stanley v. Central Intelligence Agency*, 639 F.2d 1146 (5th Cir.1981) (Unit B). The court in *Cole* stated:

> The Supreme Court has not yet had the occasion to address the situation where a veteran charges a negligent failure by the government to warn of a hazard to which he was exposed while in the service. The courts of appeals, however, have universally applied the *Feres* doctrine to bar such suits in which the

> *duty to warn originated when the injured serviceman was in the armed forces and merely continued after discharge.*

> The "continuing tort" theory was also rejected in [*Stanley* ]. In *Stanley*, a veteran alleged in part negligence by the government in failing to monitor and warn him of the harmful effects of LSD which had been administered to him during an Army chemical warfare study. In holding that *Feres* precluded the claim, the court reasoned that any negligent failure to warn "occurred at least in part during his time as a serviceman." Here, the plaintiffs' original complaint states a claim virtually identical to that in *Stanley*, namely that the government "failed to properly advise or inform [Cole] ... during his lifetime." We are bound by *Stanley* and therefore affirm the district court's dismissal of the original complaint.

*Id.* at 875–76. (Footnotes and citations omitted) (emphasis added).

Concerning the proposed amendment, the court went on to state:

> The plaintiffs' proposed amendment, however, seeks to avoid the pitfalls of *Stanley* by asserting the novel claim that the government's negligent failure to warn materialized *after* Cole's discharge when the government's knowledge concerning the hazards of radiation increased sufficiently to give rise to a new duty. According to the plaintiffs, this purely post-discharge act is separate from, rather than a continuation of, the negligence alleged in the original complaint.

*Id.* at 876. (emphasis in original). After reviewing a number of cases that have held that such a claim is not barred by *Feres*, the court held that the plaintiffs' proposed amendment was not precluded by *Feres*. The crucial inquiry, according to the court, was whether "the purported conduct of the government giving rise to the plaintiff's cause of action occurred while the injured party was still a member of the armed forces." *Id.* at 877. In *Cole*, the "conduct" occurred after the decedent was dis-

charged. During that time, as alleged by the plaintiffs,[1] the government gained greater knowledge about radiation exposure danger that created a "new" duty to warn the decedent after he was discharged. *See id.* at 875. The plaintiff, in the case at bar, has not alleged any such conduct on the part of the United States Army after Earnest Miller's discharge.

Both the decision not to provide Earnest Miller with transportation to his home and the decision not to send him to another hospital for further treatment, were decisions that were clearly made while Earnest Miller was still on active duty. As to the alleged failure to warn Earnest Miller of the severity of his condition, the plaintiff has not shown or alleged that the United States Army gained any greater knowledge of the dangers of neurosyphilis after Mr. Miller was discharged, such that a "new" duty to warn arose.[2] On the contrary, plaintiff's own exhibits make it clear that the United States Army knew about Earnest Miller's illness and the danger it posed well before his discharge. If any duty to warn arose, it arose before Earnest Miller was separated from active duty. Therefore, *Cole* and *Stanley* mandate that these claims are barred under the *Feres* doctrine.

## II. *The claims of Ruth Pitts, George Mack and Freddie Miller*

 It is clear that the plaintiff seeks damages, as personal representative, for the alleged wrongful deaths of George Mack and Freddie Miller. She also seeks damages individually, for physical and mental suffering to herself caused by witnessing the drowning of the two children. Plaintiff alleges that the deaths of the two boys were proximately caused by the United States Army's negligence in releasing Earnest Miller in a psychotic and potentially dangerous state without notifying his family about his condition.

The government contends that these claims are barred by the applicable statute of limitation. The relevant statute of limitations in this instance is that contained in 28 U.S.C.A. § 2401(b) (West Supp.1987). This section provides:

[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

Therefore, plaintiff's claims are subject to a two-year statute of limitation. These claims, however, are subject to a one-year statute of limitation if they accrued before April of 1949. *See* Act of April 25, 1949, § 1, 63 Stat. 62.

The court's research has shown that there are two separate rules concerning when a claim accrues under the FTCA. The general rule is that the statute of limitations period begins to run when the plaintiff is injured. *United States v. Kubrick*, 444 U.S. 111, 120, 100 S.Ct. 352, 358, 62 L.Ed.2d 259 (1979); *Price v. United States*, 775 F.2d 1491, 1493 (11th Cir.1985). Pursuant to this rule, all of plaintiff's claim accrued on July 18, 1945, when Earnest Miller murdered the two children and the plaintiff witnessed their deaths. As discussed above, a one-year statute of limitations was in effect at this time. Therefore,

---

1. The proposed amendment specifically alleged: [s]ubsequent to Decedent's exposure, and subsequent to Decedent's separation from the U.S. Navy, Defendant's knowledge of the harmful effects of radiation exposure expanded greatly to the point where a new duty to treat or warn the Decedent of the hazards of radiation arose. Notwithstanding Defendant's increased knowledge of the hazard to the Decedent and its duty to warn, the Defendant failed to properly advise or inform the Decedent of the hazard he incurred following his separation from military service.

*Cole,* 755 F.2d at 875 n. 4.

2. The plain language of Rule 56(c), Fed.R.Civ.P., mandates the entry of summary judgment, upon motion, against a party who fails to make a showing sufficient to establish the existence of an element *essential* to that party's case and on which that party will bear the burden of proof at trial. There is no requirement that the defendant, in the case at bar, *negate* the elements of plaintiff's claim. *See Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

under this rule plaintiff's claims became barred on July 18, 1946.

There is, however, a separate rule concerning actions under the FTCA that sound in medical malpractice. The Supreme Court has held that the statute of limitations period in medical malpractice actions is tolled until the plaintiff has discovered her injury and its cause. *See Kubrick,* 444 U.S. at 120, 100 S.Ct. at 358. The Court made it clear, however, that a plaintiff's ignorance of her legal rights does not receive the same treatment. *See id.* at 122, 100 S.Ct. at 359. Once the plaintiff is aware of the fact of her injury and its possible cause,[3] there are others who can advise the plaintff whether she has a valid legal claim, and she need only ask. *Price,* 775 F.2d at 1493. The Eleventh Circuit has put a reasonableness requirement on this rule. A medical malpractice claim accrues when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged malpractice. *Burgess v. United States,* 744 F.2d 771, 773 (11th Cir.1984).

It is not clear from plaintff's complaint whether she asserts a medical malpractice claim. Out of an abundance of caution, however, the court will address plaintiff's claims under the medical malpractice rule to determine if, and for how long, the applicable statute of limitation was tolled.[4]

In her reply brief, the plaintiff argues that she did not have sufficient information upon which she could base her claims until late March of 1985 or even later. In support of this, she has submitted exhibits indicating that, despite diligent repeated requests, the United States Army did not release Earnest Miller's medical records until 1985. Thus, plaintiff asserts the statute of limitation was tolled until this time since, without the records, she did not know the causes of the mental illness from which Earnest Miller suffered.

The government, however, has submitted various exhibits and also makes reference to certain exhibits submitted by plaintiff, that supports the conclusion that even if the court applies a tolling rule, the plaintiff knew or should have known of the possible "cause" of the deaths of the two children as early as 1947.

Plaintiff's Exhibit 15, a Veterans Administration social worker's report dated April 29, 1947, indicates that Mrs. Magnolia Miller, Earnest's mother, contemplated bringing suit against the government for the loss the the two children and her own mental anguish "based on the discharge of her son from the United States Army while he was psychotic." Further, defendant's Exhibits D and E show that Magnolia Miller applied for disability benefits on behalf of Earnest in September of 1948. Defendant's Exhibit F is the Veterans Administration's denial of this request dated October 8, 1948. This exhibit lists Earnest Miller's mental problems to be a result of "DEMENTIA PRAECOX DUE TO SYPHILIS OF THE C.N.S." Defendant's Exhibit H clearly shows that Mrs. Miller, in appealing this decision, made specific reference to exhibit F. It further indicates that she was contending that Earnest Miller's neurosyphilis was contacted while he was in the military.

Finally, plaintiff's Exhibit 16, a letter from the Board of Veterans Appeals dated April 19, 1949, clearly evidences that Magnolia Miller was informed that Earnest Miller had a "neuropsychiatric disability" caused by a "specific infection as verified by laboratory and other findings during his period of military service."

It is, of course, undisputed that Magnolia Miller knew of the injuries caused to George Mack and Freddie Miller on July

---

**3.** Even under the requirement that plaintiff must know the "cause" of her injury, there is no requirement that the plaintiff know "the particular acts that resulted in her injury." *Price,* 775 F.2d at 1493–94. The statute is tolled only until the plaintiff knows that her injuries are related to "some act" of the allegedly negligent medical personnel. *Id.* at 1494.

**4.** The plaintiff argues that the general principles of equitable tolling apply on this case. This assertion is without merit. *See Childers v. United States,* 442 F.2d 1299, 1303 (5th Cir.1971). Even if they do apply, this court sees no difference in the application of equitable tolling and the use of the malpractice rule discussed in *Price.*

18, 1945, by the hand of Earnest Miller. The above facts clearly show that at least by April of 1949, Mrs. Miller knew or should have known that Earnest Miller was diagnosed by military doctors, while in the United States Army, as having a dangerous neurological problem. Thus, at this time Mrs. Miller possessed the critical facts of the "injury" and its "cause." Pursuant to the medical malpractice rule, there is no reason to toll the statute of limitations beyond this date. *See Price*, 775 F.2d at 1493. "At this point, the plaintiff [was] no longer at the mercy [factually] of those who created the injury." *Id.* Even using the two-year limitations period, plaintiff's claims became barred no later than April of 1951.

Accordingly, for the above-stated reasons, summary judgment is GRANTED for the defendant and against the plaintiff on all claims. Further, the defendant's request for Rule 11 sanctions is DENIED insofar as this court is of the opinion that such would not be appropriate in this case.