**William R. MILBURN and Richard V. Thompson, Plaintiffs,**

v.

**UNITED STATES of America, Defendants.**

**No. 82–6514–CIV.**

United States District Court, S.D. Florida, Fort Lauderdale Division.

Nov. 19, 1986.

**1522**

See also, 734 F.2d 762.

William A. Meadows Jr., South Miami, Fla., Jose Martinez, Coral Gables, Fla., for plaintiffs.

Robert Rosenberg, Asst. U.S. Atty., Miami, Fla., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT

GONZALEZ, District Judge.

THIS CAUSE was heard by the court at a non-jury trial held on September 10 and 11, 1986, wherein plaintiffs asserted a claim for damages pursuant to the Tucker Act, 28 U.S.C. § 1346(a)(2) and the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671, *et seq.* The court has heard and considered the testimony and evidence submitted on behalf of the parties. The court has also made certain determinations as to the credibility of the witnesses and documentary evidence. The court now makes and enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Plaintiffs Richard V. Thompson and William R. Milburn purchased a twin-engine Piper Aztec Aircraft Number N–14289 on July 25, 1980. Plaintiffs leased the aircraft to several individuals, including James Wolcott, durng the years 1980 and 1981.

2. In early May, 1981, James Wolcott rented the Piper from Plaintiffs. The rental agreement was oral and plaintiffs did not require a security deposit from Wolcott. There are no records of this lease.

3. On May 6, 1981, Charles Burt was arrested in the Turks and Caicos Islands for possession of marijuana. Burt was piloting the Piper Aztec No. N–14289 at the time of his arrest. The aircraft suffered bullet damage when it was shot at by the Royal Turks and Caicos Islands Police during the arrest.

4. The Royal Turks and Caicos Police searched the aircraft and allegedly found marijuana seeds in the luggage compartment and marijuana outside the Piper. The police seized the Piper pursuant to the Control of Drugs Ordinance of the Turks and Caicos Islands.

5. Burt pleaded guilty to possession of marijuana and was fined $10,000.00. He was released upon payment of that fine.

6. Immediately after Burt entered his plea, the Magistrate in the Turks and Caicos Islands ordered a forfeiture of the Piper Aztec No. N–14289 under the Control of Drugs Ordinance, 1976, paragraph 16.

7. Burt returned to the United States and met with James Wolcott and plaintiff William Milburn. Burt apprised Wolcott

and Milburn of the events in the Turks and Caicos Islands.

8. Soon after they met with Burt, James Wolcott and William Milburn contacted Alex Perez, a pilot who is licensed to fly multi-engine planes. After several meetings with Perez, Wolcott asked Perez if he would ferry an airplane from the Turks and Caicos Islands to the United States. Wolcott told Perez that the plane had broken down in the Turks and Caicos.

9. On May 16, 1981, Perez flew to Grand Turk. He was met at his hotel room by an unidentified male who instructed him that they would leave for the airport around 4:30 a.m.

10. Early morning May 17, 1981, several unidentified males drove Perez to the Grand Turk airport. The driver turned the lights off about 100 feet before they reached the airport.

11. Perez and several escorts jumped the fence to the airport and hid behind a hangar until an airfield guard became distracted by a noise on the other side of the field.

12. While the guard was distracted, Perez and one of his escorts ran to the plane. The escort broke a lock which had been placed on the door of the plane, and Perez entered the cabin and quickly took off.

13. On May 17, 1981, officials of the Turks and Caicos Islands informed the F.B.I. that a Piper Aztec Aircraft, U.S. Registration Number N–14289, had been stolen from the airport at Grand Turk.

14. During the flight from Grand Turk, the Piper began to lose fuel. Perez had been instructed to contact Wolcott on a specific radio frequency if he ran into trouble. Perez contacted Wolcott, who, with plaintiff Richard Thompson, had been flying close-by. Perez, Wolcott and Thompson flew to Mayaguana, Bahamas where they landed. The Piper suffered damage to its nose during landing.

15. Perez, Wolcott and Thompson left the Piper in Mayaguana and returned to Florida. Several days later, the three returned to Mayaguana to repair the plane.

16. The Piper returned to Fort Lauderdale on May 19, 1981 and was stored in Hangar 20–B at Fort Lauderdale Executive Airport. The hangar was leased to James Wolcott.

17. The plane's nose was repaired and the bullet holes were patched at the airport. On July 13, 1981, Richard Thompson sent a letter to the Federal Aviation Administration asking for a change of the Piper's registration number. On July 20, 1981, plaintiffs took the plane to Gil's Aircraft to be painted.

18. Fort Lauderdale police observed the airplane at Gil's Aircraft and ran a registration check through the National Crime Information Center computer. The plane was shown to have been stolen from the government of the Turks and Caicos Islands.

19. Robert Redsicker of the Fort Lauderdale Police Department was told at Gil's Aircraft that the plane had been brought in by Richard Thompson. Redsicker telephoned Thompson and told him that the plane was being impounded because it had been stolen. Thompson replied that he owned the plane and agreed to bring proof of ownership to the Fort Lauderdale Police Station, but never presented such proof.

20. The Fort Lauderdale Police seized the Piper on July 20, 1981 and contacted the F.B.I. On July 21, 1981, the F.B.I. advised Assistant United States Attorney Bruce A. Zimet about the status of Piper Aztec No. N–14289. Zimet directed the United States Marshal Service to impound the airplane.

21. On July 23, 1981, the United States Marshal Service impounded Piper Aztec No. N–14289. The plane was locked and posted with notices that it had been impounded by the Marshal Service.

22. On July 27, 1981, the government of the Turks and Caicos Islands provided a certified copy of the Order of Forfeiture of the Piper Aztec No. N–14289 and an authorization allowing the release of the airplane

to Berkely Barron, Chief Pilot of Turks and Caicos National Airlines.

23. The United States Marshal Service released the Piper Aztec No. N–14289 to Berkely Barron on July 27, 1981.

24. The court specifically finds that plaintiffs Richard Thompson and William Milburn were at all times aware of the status of Piper Aztec No. N–14289. Plaintiffs had been apprised of the forfeiture to the Turks and Caicos government by James Wolcott. The Fort Lauderdale police notified plaintiff Thompson that the Piper was being impounded.

## CONCLUSIONS OF LAW

1. Plaintiffs seek to recover damages they allegedly sustained when defendant United States impounded and released Piper Aztec No. N–14289 to the government of the Turks and Caicos Islands. Plaintiffs contend that defendant, by and through its agents, acted negligently and in violation of due process when it released Piper Aztec No. N–14289. Specifically, plaintiffs claim that they did not receive notice that the plane would be released and that the defendant was negligent in not determining the ownership of the aircraft prior to its release.

2. Plaintiffs have filed suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 et seq. and under the Tucker Act, 28 U.S.C. § 1346(a)(2).

3. Title 28, United States Code, section 2674 and section 1346(b) provide that the United States shall be liable for tort claims to the same extent as private individuals under like circumstances. However, the Federal Tort Claims Act only "waived sovereign immunity from suit for certain specified torts of federal employees. It did not assure injured persons damages for all injuries caused by such employees." *Dalehite v. United States*, 346 U.S. 15, 17, 73 S.Ct. 956, 958, 97 L.Ed.2d 1427 (1953).

4. The Federal Tort Claims Act provides a number of instances where the United States is immune from liability under 28 U.S.C. §§ 1346(b) and 2674. *See* 28 U.S.C. § 2680.

5. Under 28 U.S.C. § 2680(c), the United States is exempt from liability for claims that arise from "the assessment or collection of any tax or customs duty, *or the detention of any goods or merchandise* by any officer of customs or excise or *any other law enforcement officer.*" 28 U.S.C. § 2680(c) (emphasis added).

6. In *Kosak v. United States*, 465 U.S. 848, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984), the Court held that when property seized by customs officials is damaged or destroyed, no tort action can be maintained against the government. The Court specifically did not decide whether actions by law enforcement officials other than customs officials are covered by 28 U.S.C. § 2680(c). *Kosak*, 465 U.S. at 852, 104 S.Ct. at 1523, n. 6.

7. In considering whether 28 U.S.C. § 2680(c) exempts the United States from liability for loss of property caused by law enforcement officers other than customs officials, the court must consider the plain language of the statute. *See Kosak*, 465 U.S. at 852, 104 S.Ct. at 1523.

8. The language of 28 U.S.C. § 2680(c) is clear. The statute provides immunity from claims arising from "the detention of any goods or merchandise by any officer of customs or excise or *any other law enforcement officer.*"

9. In *Kosak*, the Supreme Court looked to a report by Judge Alexander Holtzoff, one of the major figures in the development of the Tort Claims Act. Judge Holtzoff explained that 28 U.S.C. § 2680(c):

has special reference to the detention of imported goods in appraisers' warehouses or customs houses, *as well as seizures by law enforcement officials,* internal revenue officers, and the like.

*Kosak*, 465 U.S. at 856, 104 S.Ct. at 1525, *citing* A. Holtzoff, Report on Proposed Federal Tort Claims Bill 16 (1931) (emphasis added).

10. Several courts have held that actions of law-enforcement agents other than

customs officials are exempt from liability under 28 U.S.C. § 2680(c). For example, in *United States v. $149,345 United States Currency,* 747 F.2d 1278 (9th Cir.1984), the court dismissed a counterclaim seeking damages from the United States for injury arising from the detention and seizure of money by drug enforcement agents. The court noted that "[t]he apparent intent of section 2680(c) is to limit governmental liability for improper seizures and to restrict claimants to the statutory procedures of the forfeiture laws." *Id.* at 1285.

11. Plaintiffs argue that they are precluded from relying upon the statutory forfeiture proceedings because the Piper Aztec N–14289 has already been released to a foreign government. However, plaintiffs have no remedy from the United States government. Their recourse is with the government of the Turks and Caicos Islands.

12. The narcotics offense which gave rise to the seizure and forfeiture of the plane occurred in the Turks and Caicos Islands. The government of the Turks and Caicos forfeited the plane pursuant to its own laws. *See* The Control of Drugs Ordinance 1976, paragraph 16. "A sovereign nation ... has exclusive jurisdiction to punish offenses against its laws committed within its borders, unless it expressly or impliedly consents to surrender its jurisdiction." *Holmes v. Laird,* 459 F.2d 1211, 1216 (D.C.Cir.1972) *quoting Wilson v. Girard,* 354 U.S. 524, 529, 77 S.Ct. 1409, 1411, 1 L.Ed. 1544 (1957).

13. After it was seized by the Turks and Caicos government, the Piper Aztec No. N–14289 was stolen from Grand Turk and returned to the United States. The theft was entered into the F.B.I. National Crime Control Center computer. When the F.B.I. and the Marshal Service found and seized the stolen plane, they were involved in precisely the type of activity that is exempted from liability by 28 U.S.C. § 2680(c). For that reason, plaintiffs' claim under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 *et seq.* must fail.

14. Plaintiffs also have no remedy under the Tucker Act, 28 U.S.C. § 1346(a)(2). That section provides that this court has jurisdiction over civil actions founded upon the Constitution where the damages claimed against the United States do not exceed $10,000.00. The amount of damages claimed by plaintiffs in this case is $429,078.00. This court lacks jurisdiction over claims brought under 28 U.S.C. 1346(a)(2) when the demand is over $10,000.00. *Doe v. United States Department of Justice,* 753 F.2d 1092 (D.C.Cir.1985).

For the reasons set forth above, it is hereby

ORDERED AND ADJUDGED that Judgment be and the same is entered in favor of the defendant United States of America and against plaintiffs William R. Thompson and Richard V. Thompson.