**Tricia VU, et al.**

v.

**Edwin MEESE, III, et al.**

**Civ. A. No. 89–2003.**

United States District Court,
E.D. Louisiana.

Jan. 8, 1991.

Paul J. Galuszka, New Orleans, La., Pat A. Sheehan, Biloxi, Miss., for plaintiffs.

Constantine D. Georges, U.S. Attorney's Office, New Orleans, La., Philip Francis Cossich, Jr., Pivach, Cossich & Pivach, Belle Chasse, La., Dennis P. Couvillion, Daniel Rault Martiny, Lee, Martiny & Caracci, Metairie, La., Steven Franklin Griffith, Sr., Destrehan, La., Warren Horn, Adams & Reese, Warren M. Schultz, Jr., M. Richard Schroeder Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendants.

WICKER, District Judge.

This is a lawsuit for damages arising out of vessel seizures which occurred as a result of the following events.

The U.S. Coast Guard boarded two commercial fishing vessels owned by plaintiffs Lan Huong Thi Nguyen and Tricia Vu, which were allegedly moored in an unsafe manner in Tiger Pass, Plaquemines Parish, Louisiana. Once on board the vessels, the Coastguardsmen allegedly saw a small amount of marijuana in plain view, which prompted a complete search of both vessels and the discovery of an additional small amount of marijuana. The two vessels were seized. Through administrative proceedings, the owners paid a civil fine of about $2000 for each of the two vessels and the vessels were returned.[1] Before the vessels were released, plaintiffs executed (1) Hold Harmless and Indemnification Agreements stating that they would not sue the USA because of the vessel seizures and (2) disposition forms stating that the vessels were in the same condition as when they were seized.

In this civil suit, the plaintiffs challenge the seizure of the vessels and claim that the vessels were damaged during the seizure. The individual USA defendants[2] and the United States of America filed a motion to dismiss plaintiffs' claims. Defendants Rocky Dominic (a St. Charles Parish Sheriff's Deputy) and Johnny Marino (Sheriff for St. Charles Parish) also move to dismiss plaintiffs' complaint. Both motions were submitted to the Court on briefs without oral argument.

After considering the record, the briefs of counsel, and the applicable law, and for the reasons which follow, the Court GRANTS IN PART AND DENIES IN PART the motion of the USA defendants. The Court DENIES the motion to dismiss brought by defendants Dominic and Marino.

## MOTION TO DISMISS BROUGHT BY THE USA DEFENDANTS

The Court will consider separately each of the several grounds advanced for granting this motion to dismiss.

■ The individual USA defendants Meese, Thornburgh, Von Raab, Elkins, Fox, Hood, Cavallo and Currey contend that there is no personal jurisdiction over them because they are sued solely in their personal capacities, do not reside in Louisiana and do not have any personal contacts with the state.

Louisiana's Long Arm Statute, La.R.S. 13:3201 reaches to the full extent of the due process clause of the Fourteenth Amendment. *Quasha v. Shale Development Corporation*, 667 F.2d 483 (5th Cir. 1982) A "court's assertion of personal jurisdiction satisfies the Due Process Clause if it does not violate 'traditional notions of

---

1. State charges for possession of marijuana against plaintiff B. Van Nguyem and the deckhand on the M/V Peter Ram were subsequently dismissed after the state court granted a motion to suppress evidence.

2. The individual USA defendants are Edwin Meese, III, the former United States Attorney General; or alternatively Richard Thornburgh, the current United States Attorney General; William Von Raab, Commissioner of U.S. Customs Service; John E. Elkins, Acting Director

Regulatory Procedures and Penalties Division of U.S. Customs Service; Harvey B. Fox, Director of Office of Regulations and Rulings of U.S. Customs Service; Joel Mish, South Central District Director of U.S. Customs Service; Garland Ruiz, Deputy Director South Central District of U.S. Customs Service; Robert Grimes, Regional Administrator of U.S. Customs Service; Charles Wilson, U.S. Customs Agent; Alvin Ladner, U.S. Customs Agent; Philip G. Hood, U.S. Coast Guard; Raymond Cavalla, U.S. Coast Guard; and Malcolm Currey, U.S. Coast Guard.

fair play and substantial justice.' " *Burnham v. Superior Court of California,* —— U.S. ——, 110 S.Ct. 2105, 2110, 109 L.Ed.2d 631 (1990). [In *Burnham,* while deciding that California courts had personal jurisdiction over a New Jersey defendant, who was served in California, the U.S. Supreme Court reviewed earlier decisions and particularly *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), with the following comments.

> The validity of assertion of jurisdiction over a nonconsenting defendant who is not present in the forum depends upon whether 'the quality and nature of [his] activity' in relation to the forum, renders such jurisdiction consistent with 'traditional notions of fair play and substantial justice' (citations omitted) *Id.* [110 S.Ct.] at 2114. "[L]itigation-related 'minimum contacts' may take the place of physical presence as the basis for jurisdiction" *Id.* citing *International Shoe.*]

Defendants Meese, Thornburgh, Von Raab, Elkins and Fox, are clearly not Louisiana residents. Notwithstanding, plaintiffs contend that this Court has personal jurisdiction over federal government officials who enforce the federal laws and policies on a nationwide basis and that Meese, Thornburgh, Von Raab, Elkins and Fox enforced a federal policy known as Zero Tolerance.[3] The cases cited by the plaintiffs in support of that proposition are not from this Circuit and are otherwise inapposite. *Green v. Carlson,* 581 F.2d 669 (7th Cir.1978), was a lawsuit filed by the mother of a federal prisoner who died in jail allegedly as the result of intentional maltreatment following an asthma attack. The appellate court briefly addressed the question of personal jurisdiction, concluding that service of process was proper on the Director of the Federal Bureau of Prisons and the Assistant Surgeon General of the United States and that "both defendants had contacts with Indiana sufficient to permit use of [state procedures for effecting service on non-resident parties] and to meet

the requirements of due process." *Id.* at 676. *Driver v. Helms,* 577 F.2d 147 (1st Cir.1978), was overruled in *Stafford v. Briggs,* 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980). In reversing the *Driver* court's reliance on the nationwide service of process in 28 U.S.C. § 1391(e) to establish personal jurisdiction over government officials sued in their individual capacities, the U.S. Supreme Court restricted the application of 28 U.S.C. § 1391(e) to instances where governmental officials were sued in their official capacity.

Therefore, the fact that federal government officials enforce federal laws and policies on a nationwide basis is not sufficient in and of itself to maintain personal jurisdiction in a lawsuit which seeks money damages against those same governmental officials in their individual capacities. The governmental officials must have the requisite minimum contacts with the forum state for personal jurisdiction to exist. In this case, the Court finds that Meese, Thornburgh, Von Raab, Elkins and Fox do not have the requisite minimum contacts with the state of Louisiana. Accordingly, the Court GRANTS the motion to dismiss of those defendants.

■ As to the remaining USA defendants, the USA admits in its answer that Mish, Ruiz, Grimes, Wilson and Ladner are residents of Louisiana. Plaintiffs allege in their complaint that Coast Guardsmen Hood, Cavallo, and Curry either lived in Louisiana or performed many of their duties in Louisiana at the time of the incident. Those allegations are taken as true in a motion to dismiss. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Accordingly, the motion to dismiss those remaining USA defendants IS DENIED.

### MOTION OF USA DEFENDANTS TO DISMISS COUNT ONE

■ Plaintiffs allege in Count One that the seizure of their vessels was illegal on

---

**3.** On March 29, 1988, various agencies of the United States government, including the Customs Service, adopted a policy known as Zero Tolerance. Designed to punish recreational or personal use of illegal drugs, the policy requires

strict enforcement of federal drug laws and forfeiture statutes, even for *de minimis* amounts of marijuana. *United States of America v. One 1974 Volkswagen Van,* No. C88–1025R (W.D. Wash. Dec. 21, 1988).

the ground that the Zero Tolerance policy under which U.S. Customs acted was itself illegal because it was not submitted for public notice and comments under the rule-making provisions of the Administrative Procedures Act (APA), 5 U.S.C. § 553.

After careful review, the Court finds that the Zero Tolerance Policy is not a "legislative-type" rule to which the APA and its requirements for notice and comment apply. "General statements of policy are rules directed primarily at the staff of an agency describing how it will conduct agency discretionary functions, while other rules are directed primarily to the public in an effort to impose obligations on them." *Noel v. Chapman,* 508 F.2d 1023, 1030 (2nd Cir.) *cert. denied,* 423 U.S. 824, 96 S.Ct. 37, 46 L.Ed.2d 40 (1975), quoting 23 Admin.L. Rev. 101, 155 (1970–1971).

The statutory authority for seizure of the vessels appears in 19 U.S.C. § 1595a(a) which provides in pertinent part:

[E]very vessel, … used in to aid in, or to facilitate … the importation, bringing in … or subsequent transportation of any article which is being or has been introduced, or attempted to be introduced, into the United States contrary to law … may be seized and forfeited. …

Zero Tolerance Policy did not create a new law but only provided for strict uniform enforcement of existing drug and forfeiture laws. *Accord USA v. One 1974 Volkswagen Van,* # C88–1025R (W.D. Wash., 1988). In *One 1974 Volkswagen Van,* a van was seized because a single handrolled marijuana cigarette and rolling papers were found in its sink. One of the grounds for challenging the forfeiture in that case was that the government's policy of zero tolerance violated the notice and comment requirements of the APA, 5 U.S.C. §§ 551 *et seq.* The district court found that

The Zero Tolerance policy established stricter enforcement of existing laws; it did not create additional obligations or make substantive changes in the law. … What has changed is not the content or administration of the forfeiture provisions, but rather the government's enforcement of the laws prohibiting the possession or importation of illegal

drugs. New policies governing the prosecution of criminal statutes are classic examples of interpretative rules, which are outside the scope of APA. *Id.* at 4–5.

*Brown Express, Inc. v. USA et al,* 607 F.2d 695 (5th Cir.1979), on which the plaintiffs rely is distinguishable. At issue in *Brown* was a "Notice of Elimination of Notification Procedure in the Processing of Emergency Temporary Authority Applications [for motor or water carriers to provide transportation to an area without such transportation.]" The Fifth Circuit stated that

[W]hen a proposed regulation of general applicability has a substantial impact on the regulated industry, or an important class of the members or the products of that industry, notice and opportunity for comment should first be provided. … *Id.* at 702.

The Fifth Circuit then concluded that the change in the notification practice had substantial impact on the motor carrier industry and thus the promulgation of notice of elimination of notification was controlled by the comment and notice requirements of the APA. Zero Tolerance Policy is not directed to a regulated industry, but is directed at illegal drug traffickers. *Brown* does not apply to cases involving seizure for drug violations.

Accordingly, defendants' motion to dismiss Count One of the plaintiffs complaint against all remaining USA defendants is granted.

## MOTION OF USA DEFENDANTS TO DISMISS COUNT FOUR

Count Four of the complaint alleges that the vessel seizures violated plaintiffs' Fourth, Fifth, Eighth, and Fourteenth Amendment rights.

*The Fifth and Fourteenth Amendments (illegal taking and denial of due process):*

■ The U.S. Supreme Court specifically found that the forfeiture of a leased pleasure yacht with marijuana on board, even where the owner is innocent of wrongdoing, does not constitute an illegal taking under the Fifth Amendment. *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S.

663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). The *Calero–Toledo* Court in *dicta* suggested that constitutional problems might arise in a case

of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that he reasonably could be expected to prevent the proscribed use of his property; for, in that circumstance, it would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive. *Id.* at 689–690, 94 S.Ct. at 2094–2095.

However, in this case, no evidence has yet been submitted to indicate whether or not the owners were involved or aware of the presence of marijuana on board their vessels. Plaintiffs have also alleged in their complaint that their vessels were nearly destroyed as a result of the seizure. Taking the allegations of the complaint as true and construing them in the light most favorable to the plaintiff, the Court finds that there is a substantial question over whether the seizure served a legitimate purpose and/or was unduly oppressive.

Accordingly, the USA defendants' motion to dismiss the allegations in Count Four based on the Fifth and Fourteenth Amendment is denied.

*Fourth Amendment (illegal search):*

■ Plaintiffs concede in their brief that the Coast Guardsmen had the right to board the vessels on the night in question. The Fourth Amendment claim in Count Four is based rather on complaints related to the extent of the search which included bedding and the shirt pocket of one of the crew.

Development of probable cause to believe that controlled substances are aboard a vessel permits a more extensive search of the vessel which does not offend the Fourth Amendment. *United States v. Villamonte–Marquez,* 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983). [Customs officers boarded a sailboat anchored in the ship channel, and then arrested the occupants after smelling and observing marijuana.] However *Villamonte–Marquez* was decided after trial, and not on a motion to dismiss. In this case, what actually happened

on the vessels has not yet been established. All that is before this Court are the pleadings, the allegations of which are taken as true and construed in a light most favorable to the plaintiffs. *Conley, supra.*

Consequently, the Court DENIES the USA defendants' motion to dismiss the allegations in Count Four based on the Fourth Amendment.

*Eighth, Fifth and Fourteenth Amendment (excessive fine):*

■ The Fifth Circuit has not addressed the relationship, if any, between allegations of an excessive civil fine in a forfeiture proceeding and the Eighth Amendment's prohibition against cruel and unusual punishment. The Ninth Circuit Court of Appeals has addressed that issue and decided that the Eighth Amendment is not applicable to allegations of excessive fines by virtue of the historical development of civil forfeiture proceedings. "Civil forfeiture actions were historically characterized as proceedings *in rem* against the King. These objects were treated as being guilty themselves" apart from the guilt or innocence of the owner of the thing forfeited. *United States v. Tax Lot 1500, Township 38 South, etc.* 861 F.2d 232, 234 (9th Cir. 1988), *cert. denied,* —— U.S. ——, 110 S.Ct. 364, 107 L.Ed.2d 351 (1989). *Cf. United States v. Busher,* 817 F.2d 1409 (9th Cir. 1987) [Forfeiture of property used to produce contraband does not violate the Eighth Amendment.]; *United States v. Stangland,* 242 F.2d 843 (7th Cir.1957) [The Eighth Amendment does not apply to suits to recover civil penalties.]

This Court concurs with the reasoning of the Ninth Circuit and finds that there can be no civil action under the Eighth Amendment for damages allegedly arising from the imposition of economic penalties in a forfeiture proceeding.

■ The plaintiffs also claim that the civil fines and the seizure of their vessels during shrimping season violated their rights under the Fifth and Fourteenth Amendments because "the penalty ... was disproportionate to any level of culpability so as to shock the conscience." Forfeiture proceedings in and of themselves do not violate the Fifth Amendment. *U.S. v.*

*Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency,* 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983). The alleged fine to which the plaintiff objects was imposed by an Administrative Law Judge, and consisted of a mitigated penalty plus the costs of seizure and impoundment of the vessels. Payment of seizure-related costs also does not violate the claimants' rights of due process under the Fifth Amendment. *Gonzales v. Rivkind,* 858 F.2d 657 (11th Cir.1988).

█ The complaint also alleges further but unspecified economic penalties resulting from the seizure and retention of the vessel during shrimping season. An unreasonable delay in forfeiture proceedings may implicate due process rights under the Fifth Amendment. *United States v. $8,850, supra.* Although the U.S. Supreme Court in that case found an eighteen months delay between the seizure and the initiation of forfeiture proceedings was not unreasonable, no *per se* rule was imposed. Rather the Court used a balancing test involving four factors: the length of the delay, the reason for the delay, claimants' assertion of rights and the prejudice suffered as a result of the delay. The time delays cited in plaintiff's complaint range from May 5, 1988, to May 11, 1988. While the delay seems short compared to the eighteen months which was found reasonable in *United States v. $8,850,* the Court does not have before it any further evidence with which to weigh the constitutional ramifications, if any, of any alleged economic losses attendant to the loss of use of the vessels.

Accordingly, the USA's motion to dismiss the claims in Count Four brought under the Eighth Amendment, and under the Fifth and Fourteenth Amendments as they relate to the payment of fines and costs prior to the vessels' release is granted; but the USA's motion to dismiss the claims in Count Four brought under the Fifth and Fourteenth Amendments as they relate to economic losses resulting from any alleged delays in the alleged release and return of the vessels to service is denied.

## MOTION TO DISMISS CONSTITUTIONAL CLAIMS BASED ON QUALIFIED IMMUNITY

Claiming qualified immunity, defendants Meese, Thornburgh, Von Raab, Elkins, Fox, Mish, Ruiz, Grimes, Wilson, Ladner, Hood, Cavallo, and Currey assert that they are entitled to a dismissal of plaintiffs' constitutional claims contained in Counts Three, Five, Nine and Ten.[4]

Upon review, the Court finds that only Counts Four, Nine and Ten contain constitutional claims, and discussion of qualified immunity is limited to those Counts.[5] The constitutional claims in Count Four are discussed above. Count Nine asserts a claim against the named governmental officials based on an abuse of discretion and denial of due process under the Fifth Amendment. Count Ten relies on disproportionality and excessive fines under the Fifth Amendment.[6]

Plaintiffs first argue in opposition to this defense that the issue of qualified immunity is one for the jury to decide. The issue of qualified immunity need not always be decided by a jury, however. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).[7] In *Anderson,*

---

**4.** The Court has already determined that it has no personal jurisdiction over defendants Meese, Thornburgh, Von Raab, and Customs officials Elkins and Fox. Therefore the issue of qualified immunity is directed only to the remaining Customs officers Mish, Ruiz, Grimes, Wilson, Ladner, and U.S. Coast Guardsmen Hood, Cavalla, and Currey.

**5.** The plaintiffs in Count Three claim violations of 42 U.S.C. § 1985. Plaintiffs do not oppose the motion to dismiss all claims under 42 U.S.C. § 1985 against these defendants so the Court need not consider the question of qualified immunity of those same defendants under Count

Three. Count Five concerns the intentional infliction of emotional distress and does not seek relief under the United States Constitution.

**6.** For the reasons discussed earlier, the Court finds no merit to plaintiffs' constitutional claims under the Eighth Amendment.

**7.** *Anderson* presented the question of whether a federal law enforcement officer who participated in a search that violated the Fourth Amendment might be held personally liable for money damages if a reasonable officer could have believed that the search did not violate the Fourth Amendment.

the U.S. Supreme Court decided that principles of qualified immunity could be argued on a motion for summary judgment. *See also Butz v. Economou*, 438 U.S. 478, 490, 507–508, 98 S.Ct. 2894, 2902, 2911, 57 L.Ed.2d 895 (1978). [Unless the complaint states a compensable claim for relief under the Federal Constitution, it should not survive a motion to dismiss. Damage suits concerning constitutional violations can be terminated on a properly supported motion for summary judgment based on the defense of immunity.]

In its seminal decision on governmental immunity, *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), the U.S. Supreme Court explained that an official is immune if he performs "discretionary acts at those levels of government where the concept of duty encompasses the sound exercise of discretionary authority." 360 U.S. at 575, 79 S.Ct. at 1341. Once an official is found to be exercising discretion, the act must be "within the outer perimeter of [the officials's] line of duty" before the official will be granted immunity. *Id.* The Fifth Circuit has interpreted the "requirements that the act be within the outer perimeter of the line of duty [as] another way of stating that the act must have more or less connection with the general matters committed to the officer's control or supervision and not be manifestly or palpably beyond his authority." *Norton v. McShane*, 332 F.2d 855, 859 (5th Cir.1964).

In *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the U.S. Supreme Court explained further that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." [*Harlow* concerned immunity asserted by senior White House aides to former President Richard M. Nixon.]

[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action assessed in light of the legal rules that

were 'clearly established' at the time it was taken ... Therefore the "contours of the right [allegedly violated] must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039 [97 L.Ed.2d 523] (1987).

While the U.S. Supreme Court has defined the limits of qualified immunity in objective terms, the Court provided "no license to lawless conduct. The public interest in deterrence of unlawful conduct and in compensation of victims remains protected by a test that focuses on the objective legal reasonableness of an officials' act." *Harlow v. Fitzgerald*, 457 U.S. at 819, 102 S.Ct. at 2739.

 The plaintiffs contend that the clearly illegal act on the part of the variously named defendants which defeats their claim for qualified immunity is the enforcement of the Zero Tolerance policy. It is undisputed that the Zero Tolerance Policy was established at the time of the incident and allowed the seizure and forfeiture of vessels transporting any article introduced into the United States contrary to law. The plaintiffs admit that the U.S. Coast Guard had a right to board the vessel. Therefore implementation and enforcement of Zero Tolerance Policy in and of itself does not defeat defendants' claims for qualified immunity. Under the *Anderson* standard that "in the light of pre-existing law the unlawfulness must be apparent," plaintiffs argument fails as to all national and regional USA defendants. However, plaintiffs contend that the search of the vessels by the local U.S. Coast Guardsmen exceeded the bounds permitted by the Fourth Amendment and the retention of the vessels by the local U.S. Customs Agents violated their constitutional rights under the Fifth and Fourteenth Amendments. Even the *Anderson* court which established the objective legal reasonableness requirement stated that

the determination whether it was objectively legally reasonable to conclude that a given search was supported by probable cause or exigent circumstances will

often require examination of the information possessed by the searching officials.... The relevant question ... is that the objective (albeit fact-specific) question whether a reasonable officer could have believer Anderson's warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed. *Anderson* 483 U.S. at 641, 107 S.Ct. at 3040.

The motion before the Court, however, is a motion to dismiss, not a motion for summary judgment. There is no evidence yet of the reasonableness of belief that the search and detention of these vessels by the local governmental officials was lawful. There is no evidence by which this Court can determine whether the actions of the local U.S. Coast Guard and Customs officials came within the outer perimeters of their duty.

Accordingly, the Court grants the motion to dismiss the constitutional claims in Count Nine against Mish, Ruiz, and Grimes; but denies the motion to dismiss the constitutional claims against Wilson, Ladner, Hood, Cavallo, and Currey.

## MOTION TO DISMISS TORT CLAIMS BASED ON ABSOLUTE IMMUNITY

▇▇▇ This portion of the motion to dismiss also concerns only USA defendants Mish, Ruiz, Grimes, Wilson, Ladner, Hood, Cavallo, and Currey. The USA argues that plaintiffs' tort claims should be dismissed on the ground that they are absolutely immune under the Federal Tort Claims Act ["FTCA"], which requires substitution of the United States as the exclusive defendant.

28 U.S.C. § 2679(d)(1) of the Federal Tort Claims Act provides that

Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and

the United States shall be substituted as a party defendant.

Plaintiffs argue, however, that the Coast Guard officers are not subject to the immunity contained in 28 U.S.C. § 2679 because one of the exceptions applies, in particular, 28 U.S.C. § 2680(h). 28 U.S.C. § 2680(h) states:

The provisions of this chapter ... shall not apply to:

(h) Any claim arising out of assault, battery, false imprisonment, *false arrest*, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights; *Provided*, That, *with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter ... shall apply to any claim arising, on or after the date of the enactment of this proviso, out of ... false arrest.* For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

By its plain wording, the 28 U.S.C. § 2680(h) exception does not apply to law enforcement officers. Law enforcement officers are defined in that same exception as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." U.S. Coast Guard officers come within that definition. Therefore this Court finds that 28 U.S.C. § 2680(h) does not except the Coast Guard officers from the immunity granted in 28 U.S.C. § 2679. This does not mean, however, that the Coast Guard officers are automatically entitled to immunity. While military men acting in the line of duty are considered as acting within the scope of their employment for FTCA purposes [28 U.S.C. § 2671] plaintiffs' allegations that Hood, Cavallo and Curry acted beyond the scope of that duty is still unresolved. The particular facts and activities on board the vessels on the night in question have not yet been established.

Accordingly, the Court grants the motion of defendants Mish, Ruiz, Grimes, Wilson and Ladner to dismiss the plaintiffs' claims under the Federal Tort Claims Act contained in Count Eleven and plaintiffs' claims for false arrest contained in Count Eight. The Court denies at this time the motion to dismiss plaintiffs' tort claims against Hood, Cavallo and Curry.

## MOTION TO DISMISS THE TORT CLAIMS BASED ON CUSTOMS OFFICERS' IMMUNITY

■ Customs Officers Mish, Ruiz, Grimes, Wilson and Ladner also sought dismissal on the grounds of governmental immunity under 28 U.S.C. § 2680(c). The Court finds that under 28 U.S.C. § 2680(c) neither the individual customs officers nor the USA can be liable for damages resulting from the detention of the vessels.

28 U.S.C. § 2680(c) provides under the title Exceptions

The provisions of this chapter ... shall not apply to—

Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer.

28 U.S.C. § 2680(c) has been broadly interpreted. *Kosak v. United States*, 465 U.S. 848, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984). In *Kosak*, petitioner's art collection was seized when he was suspected of smuggling it into the country. Although he was acquitted and his collection returned, he sued because some pieces were allegedly damaged while in the custody of the Customs Service. The Court found that the Tort Claims Act does not cover suits which allege that customs' officers injured property that had been detained by the Customs Service. For purposes of § 2680(c), any claims "arising in respect of" means any claim "arising out of" the detention of any goods or merchandise by Customs officers, including claims resulting from negligent

handling or storage of the property, as well as claims for damage caused by the detention itself. *See also Solus Ocean Systems, Inc. v. U.S. Customs Service*, 777 F.2d 326 (5th Cir.1985) [Customs' sale of detained merchandise is within the definition of "arising in respect of ... the detention of any goods" in 28 U.S.C. § 2680(c) and suit for negligence and wrongful act is barred under 28 U.S.C. § 2680(c) ]; *United States v. One 1972 Wood 19 Ft. Custom Boat*, 501 F.2d 1327 (5th Cir.1974) [28 U.S.C. § 2680 specifically prohibits the bringing of any claim arising from the detention of any goods or merchandise by a customs officer.] *Accord, Milburn v. United States*, 647 F.Supp. 1521 (S.D.Fla.1986). [The § 2680(c) exemption from liability for claims arising from the detention of any goods or merchandise applies, not only to detention effected by Customs officers, but to detention effected by "any other law enforcement officers."]

The plaintiffs argue that all of the § 2680(c) decisions are distinguishable because none involve unconstitutional seizures. This part of the motion, however, does not concern constitutional violations but is directed specifically to the tort claims against the Customs Officers and the USA brought under the FTCA. *United States v. Artieri*, 491 F.2d 440 (2nd Cir. 1974), *cert. denied* 419 U.S. 878, 95 S.Ct. 142, 42 L.Ed.2d 118 (1974), on which the plaintiffs rely, is not only distinguishable but its *dicta* accords with the Court's findings. *Artieri* concerned a challenge to the granting of a motion to suppress. In *dicta*, the Second Circuit explained that victims of illegal searches can sue federal agents personally under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In a footnote, the Court also explained that the FTCA does not waive federal immunity for loss of illegally seized goods or for claims arising from false arrest. 491 F.2d at 446, n. 2.

Plaintiffs also rely on 28 U.S.C. § 2680(h).[8] That statute does not address

---

**8.** 28 U.S.C. § 2680(h) states in pertinent part: The provisions of this chapter ... shall not apply to: (h) Any claim arising out of assault, battery, false imprisonment, *false arrest,* mali-

cious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights; *Provided,* That, *with regard to acts or omissions of investiga-*

claims for damages from detention of goods but concerns an exception to the FTCA for several specified intentional torts including false imprisonment and false arrest. The U.S. Coast Guardsmen, not the U.S. Customs Officers were implicated in the charges of false arrest. (See discussion, *supra.*)

■ Movers, relying on *Stanley v. CIA*, 639 F.2d 1146, 1147 (5th Cir.1981), argue that plaintiffs' claims for intentional infliction of emotional distress and wrongful death are so related to the extended detention of the vessels, that they too should come within the intentional tort exception to the FTCA. The Court does not agree. In *Stanley,* the Fifth Circuit said generally that "[c]ourts have uniformly held that where conduct complained of falls within one of the statutory exceptions to the FTCA, the District Court is without jurisdiction of the subject matter thereof." 639 F.2d at 1147. However, *Stanley* did not concern either § 2680(c) or § 2680(h), but involved a lawsuit by a serviceman for injuries sustained while he was a volunteer in an Army program. The appellate court affirmed the lower court's finding that a claim for injuries allegedly sustained by a serviceman was barred under the *Feres* doctrine. *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). This lawsuit is not one for injuries to servicemen, but is for injuries allegedly received by private citizens at the hands of servicemen, so the *Feres/Brown* doctrine does not apply.

Although there are no Fifth Circuit cases on point, the Eighth Circuit held in *Gross v. United States,* 676 F.2d 295 (8th Cir.1982) that a claim for intentional infliction of emotional distress was not included within the exceptions for intentional torts in 28 U.S.C. § 2680(h). In *Gross,* the plaintiff sued for damages for the intentional infliction of emotional distress by members of the Lake County Agriculture Stabilization and Conservation Service Committee ["ASCS"] growing out of actions to thwart

Gross' participation in the USDA feed grain program. The USA argued that even though intentional infliction of emotional distress did not technically fall within the intentional torts exception to the FTCA, the Court should disregard the label and determine the scope of the exception by examining the underlying acts that gave rise to the complaint. The Eighth Circuit Court of Appeal found that the Court should not read exceptions into the FTCA beyond those provided by Congress. Because Congress had neither added the tort of intentional infliction of emotional distress to § 2680(h) and had not indicated that the list in § 2680(h) was not intended to be exhaustive, the Court found that Gross' claim for damages for the intentional infliction of emotional distress was not barred by § 2680(h). *Accord Bergman v. USA,* 751 F.2d 314, 317 (10th Cir.1984); *Baird v. Haith et al,* 724 F.Supp. 367 (D.Md.1988). *But cf. Metz v. United States,* 788 F.2d 1528 (11th Cir.1986) [The intentional infliction of emotional distress would be excepted from the FTCA if it were shown to arise out of false imprisonment, one of the intentional torts listed in 28 U.S.C. § 2680(h). *Metz* is distinguishable, however, the *Tricia Vu* complaint alleges that the claim for intentional infliction of emotional distress and wrongful death arises out of the detention of the vessels and not from any of the torts listed in 28 U.S.C. § 2680(h).]

There is also no jurisprudence that discusses the interplay between § 2680(c) and § 2680(h).

§ 2680(c) does begin "Any claim" and has generally been broadly construed in the cases discussed earlier. However, every single one of the exceptions to the FTCA in § 2680 begin with the words "Any claim." Had Congress intended to include intentional acts in the phrase "[a]ny claims" which introduces all exceptions to the FTCA enumerated in § 2680, then § 2680(h) and its specific limitations would

*tive or law enforcement officers of the United States Government, the provisions of this chapter ... shall apply to any claim arising, on or after the date of the enactment of this proviso, out of ... false arrest. For the pur-* pose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

not be needed and would be mere surplusage.

> [W]ords in statutes should not be discarded as "meaningless" and "surplusage" when Congress specifically and expressly included them, particularly where the words are excluded in other sections of the same act. *Wong Kim Bo,* 472 F.2d [720] at 722 [ (5th Cir.1972) ] *see also Meltzer v. Board of Public Instruction,* 548 F.2d 559, 578 n. 38 (5th Cir. 1977), *cert. denied,* 439 U.S. 1089, 99 S.Ct. 872, 59 L.Ed.2d 56 (1979).

*Kashanchi v. Texas Commerce Medical Bank, N.A.,* 703 F.2d 936 (5th Cir.1983).

Therefore as a matter of statutory construction, this Court finds that the exception in § 2680(c) covers claims arising out of the negligent actions of customs officers in detaining goods or merchandise, and any exception which might be due those same officers for intentional acts would have come within the exceptions listed in § 2680(h).[9] As the *Gross* court found, intentional infliction of emotional distress is not in the § 2680(h) list. Wrongful death is also not listed. Therefore this Court finds no statutory exception within the FTCA for those claims.

Accordingly, the motion of defendant customs officers Mish, Ruiz, Grimes, Wilson and Ladner to dismiss plaintiffs' claims brought against them in Count Eleven under the Federal Tort Claims Act for alleged negligent handling or storage is granted, but the defendants' motion to dismiss the plaintiffs' claims for emotional distress and wrongful death is denied.

### MOTION TO DISMISS PLAINTIFFS' §§ 1983, 1985 AND 1986 CLAIMS

■ Plaintiffs concede that they have not alleged a cause of action against any of the moving defendants under 42 U.S.C. §§ 1985 and 1986. Defendants Cavallo, Hood, Currey, Ladner and Wilson argue that they were acting under color of feder-

al law not state law when they participated in the search and seizure of the vessels, and therefore plaintiffs' allegations based on 42 U.S.C. § 1983 are inapplicable.

Plaintiffs, on the other hand, contend that they have alleged a § 1983 cause of action because the complaint in essence charges that the U.S. Coastguardsmen who boarded the vessels and made the arrests were doing so under the state marijuana laws.

The gravamen of the plaintiffs' complaint challenges the actions of these defendants in implementing the Zero Tolerance Policy. When the Coast Guard officers searched the vessel, they were acting pursuant to that policy which is designed to strengthen the federal laws against drug trafficking. The Civil Rights Act of § 1983 does not apply to federal officers acting under color of federal law. *Broadway v. Block,* 694 F.2d 979, 981 (5th Cir.1982); *Rodriguez v. Ritchey,* 556 F.2d 1185, 1189, n. 13 (5th Cir.1977); *Robison v. Wichita Falls & North Texas Community Action Corp.,* 507 F.2d 245 (5th Cir.1975); *Roots v. Callahan,* 475 F.2d 751 (5th Cir.1973); *Norton supra.*

Accordingly, the Court grants the motion of the USA defendants to dismiss plaintiffs' claims brought under 42 U.S.C. §§ 1983, 1985 and 1986.

### MOTION TO DISMISS BASED ON SIGNED RELEASE

■ Movers contend that plaintiffs executed a consent release and their claims should therefore be dismissed. Both the USA and the plaintiffs attached exhibits to support this portion of the motion. Accordingly, this portion of the motion will be converted to a motion for summary judgment as provided for in FRCP 12(c).

The USA attached signed United States Customs Service Hold Harmless and In-

---

**9.** This view is further supported by language from the House Judiciary Committee which described the proposed exceptions as follows:

> These exemptions cover claims arising out of the loss or miscarriage of postal matter; the assessment or collection of taxes or assessments; the detention of good by customs offi-

cers; admiralty and maritime torts; deliberate torts such as assault and battery; and others. H.R.Rep. No. 1287, 79th Cong., 1st Sess., 6 (1845). *Kosak v. United States,* 465 U.S. 848, 857, 104 S.Ct. 1519, 1525, 79 L.Ed.2d 860 (1984).

demnification Agreement forms executed on May 12, 1988 prior to the release of the vessels and argued that under Louisiana law compromises may only be rescinded for (1) error in the person; (2) error of fact on the matter in dispute; (3) fraud, or (4) violence. [La.C.C. arts. 3073, 3079. *Halford v. Dugas*, 422 So.2d 693 (La.App. 3rd Cir.1982)], none of which exist in this case. The Vietnamese plaintiffs in turn attached affidavits which contend that the agreements were signed under duress and without knowledge of their contents. The affidavits state that they were in economic distress because the vessels were their only means of making a living and because one of the plaintiffs was pregnant. Also the plaintiffs attest to the fact that English is not their native language and they did not understand what they were signing at the time. Plaintiffs also state in the affidavit that the vessels were miles away when the releases were signed and they had not been allowed to see the vessels prior to signing.

A release may be invalidated for lack of consent where the circumstances surrounding the execution of the release clearly show that the plaintiff was given no alternative to signing the release in order get his vehicle returned. *Jordan v. Baton Rouge*, 529 So.2d 412 (La.App. 1st Cir.), *cert. den.* 532 So.2d 152 (La.1988). The Louisiana Court of Appeal for the First Circuit said

> A release or waiver has legal validity only if it possesses the essential elements of a contract, including consent ... The consent of each party to a contract must be the result of a free and deliberate exercise of each party's will.... The circumstances surrounding the execution of the release in this case clearly show that Jordan did not freely consent to the document he signed. He was given no alternative but to sign the form in order to get his car back. As a result, the release is without effect. *Id.* at 415.

The affidavits attached do raise a question of fact surrounding the execution of the releases. Accordingly, that portion of this motion to dismiss which relates to the alleged execution of a release by the plaintiffs is denied.

## SERVICE OF PROCESS

The court records show no evidence of personal service on any of the individual USA governmental defendants. Because the governmental defendants are being sued in their individual capacities, they should have been personally served with this lawsuit. Although plaintiffs contend that the individual USA defendant waived the defense of insufficiency of service of process under FRCP 12(h), there is evidence in the record that the sufficiency of service of process was raised by the USA defendants in their answer and accordingly, the Court concludes that the defense has not been waived. [Doc. # 19.]

FRCP 4(j) provides:

> If a service of the summons and complaint is not made upon a defendant within 120 days after filing of the complaint and the party on whose behalf such service was required *cannot show good cause when such service was not made* within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion. (Emphasis provided.)

The Fifth Circuit standard for "good cause" is that the plaintiff must show "excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice ..." *Winters v. Teledyne Movible Offshore, Inc.* 776 F.2d 1304, 1306 (5th Cir.1985). The plaintiffs contend in their memoranda that they have made a good faith effort to serve the individual government defendants personally, but have been delayed because of trouble identifying the home addresses of the many officials. The lawsuit was originally filed in May, 1989; the First Amended Complaint was filed in August, 1989; the defendants' motion to dismiss was originally filed in June, 1990. The Court finds it unlikely that the plaintiffs have been unable to serve the individual USA defendants at their home addresses in the interim.

Dismissal for failure to serve within the FRCP time periods is a harsh remedy which is only warranted in "extreme situa-

tions where there is a clear record of delay or contumacious conduct by the plaintiff." *Gaspard v. United States*, 713 F.2d 1097, 1106 (5th Cir.1983), *cert. den.* 466 U.S. 975, 104 S.Ct. 2354, 80 L.Ed.2d 826 (1984). The Court finds in this case just such an extreme situation and accordingly, the motion of the remaining unserved USA defendants (Mish, Ruiz, Grimes, Wilson, Ladner, Hood, Cavallo, and Currey) to dismiss is granted without prejudice.

## DEFENDANTS' DOMINIC AND MARINO MOTION TO DISMISS

 State defendants Rocky Dominic and Johnny Marino move to dismiss plaintiffs' complaint because they allege that they were at all times acting at the request of, among other parties, the United States Customs Service and if the court finds that the action against the USA should be dismissed, then the action against the Deputy Sheriff and the Sheriff who participated in the seizure at the specific request of the customs service, should also be dismissed.

The plaintiffs oppose this motion for the same reasons that they opposed the motion to dismiss brought by the USA. Additionally, they contend that they have proper claims against Dominic and his superior, Marino, under 42 U.S.C. §§ 1983 and 1985 because of the following alleged facts: (1) Plaintiffs went to the St. Charles Parish facility, the Lower River Marine, Inc. to take physical possession of the vessels after they were administratively released by the U.S. Customs Service. (2) After they discovered the vessels had been damaged, they called the St. Charles Parish Sheriff's Department for assistance in retrieving their belongings. (3) Instead of responding appropriately, Rocky Dominic threatened them and helped the Lower River Marine personnel cut the vessels adrift in the Mississippi River.

As stated, for purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff and its allegations are taken as true. The facts have yet to be developed. Accordingly, the motions to dismiss brought by state defendants Dominic and Marino to dismiss are denied.

## SUMMARY

In summary then, the motions to dismiss are granted in the following regard: Defendants Meese, Thornburgh, Von Raab, Elkins and Fox are dismissed from this lawsuit. Count One of the complaint is dismissed in its entirety. Plaintiffs' claims in Count Four brought under the Eighth Amendment and under the Fifth and Fourteenth Amendments relating to payment of fines and costs prior to the vessels' release are dismissed. The constitutional claims against Mish, Ruiz and Grimes are dismissed. The tort claims in Count Eleven and those in Count Eight for false arrest against Mish, Ruiz, Grimes, Wilson and Ladner are dismissed. The tort claims for negligent handling or storage in Count Eleven against the customs officers Mish, Ruiz, Grimes, Wilson and Ladner are dismissed. The claims against the USA defendants Mish, Ruiz, Grimes, Wilson, Ladner, Hood, Cavallo, and Currey under 42 U.S.C. §§ 1983, 1985 and 1986 are dismissed.

The motion to dismiss is denied in the following regard: The motion to dismiss the constitutional claims in Count Four under the Fourth Amendment and under the Fifth and Fourteenth Amendment as the latter relate to economic losses resulting from any alleged delays in the release and return of the vessel to service is denied. Those remaining constitutional claims can be asserted against Wilson, Ladner, Hood, Cavallo and Curry. The motion to dismiss the tort claims in Count Eleven and those in Count Eight for false arrest against Hood, Cavallo and Curry are denied. The motion to dismiss the plaintiffs' tort claims for the intentional infliction of emotional distress and wrongful death against Mish, Ruiz, Grimes, Wilson and Ladner is denied. The motion to dismiss based on the plaintiffs' alleged release is denied.

However, the remaining claims against Mish, Ruiz, Grimes, Wilson, Ladner, Hood, Cavallo, and Currey are dismissed without prejudice for insufficiency of service of process.

Finally, the motion of state defendants Dominic and Marino to dismiss is denied.